## JONES *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 103.   Argued January 20, 1922.—Decided February 27, 1922.

1. One who, in pursuance of a scheme to acquire the land for himself, procures others to make homestead applications and entries, knowing that they have no intention to establish residence or otherwise comply with the law and that their proofs to the contrary, made with his connivance, and upon the faith of which the patents are issued, are false, is guilty of defrauding the United States of the value of the land.   P. 47.

2. The right of the United States to recover damages for such a fraud is not defeated by the facts that the period of residence stated in the entry proofs was insufficient to comply with the statute and that, but for a mistake of law in that regard upon the part of the Land Department, the patents would not have issued.   P. 46.

3. In an action for fraud by inducing fraudulent entries resulting in patents, evidence that the defendant induced other entrymen to file on other land and of his conduct touching contracts on similar claims, is admissible as bearing on his knowledge and intent, if

40.              Argument for Plaintiff in Error.

the judge in his discretion does not regard it as too remote or as raising too lengthy and complex collateral issues, even if afterwards explained by the defendant.   P. 48.

4. Evidence of current rates for similar lands situate in adjacent townships, given by experts who learned the rates by experience and report, *held* admissible to prove value of the lands in question. P. 48.

5. In an action for defrauding the Government of public land by procuring false proofs upon which patents were issued, *held* that an instruction directing the jury, if they found for the plaintiff, to measure the damages at the market value with legal interest at 6 per cent. from the date of the final certificate to that of the trial, was not a ground for reversing the judgment rendered for the United States.   P. 49.

265 Fed. 235, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment for the United States in the District Court in an action to recover the value of public lands patented as a result of fraudulent entries and proofs procured by the defendant.

*Mr. John H. Hall* and *Mr. Jay Bowerman,* for plaintiff in error, submitted.

Entrymen unable to make improvements by reason of age or poverty may contract with another to build dwellings, clear land and furnish money to buy stock and provisions, without violation of the homestead laws.   *Conway* v. *United States,* 95 Fed. 615; *Grubbs* v. *United States,* 105 Fed. 314, 319.

Mortgaging the homestead by entryman is not alienation where the mortgage is given to procure money to improve the land.   *Fuller* v. *Hunt,* 48 Idaho, 163; *Dickerson* v. *Bridges,* 147 Mo. 235; *Orr* v. *Ulyatt,* 23 Nev. 134; *Stock* v. *Duvall,* 7 Okla. 213; *Hafeman* v. *Gruss,* 199 U. S. 342, 345.

After final proof a homestead claimant may, before patent issues. contract, sell or convey, as though patent had

issued. *Williamson* v. *United States,* 207 U. S. 425; *United States* v. *Biggs,* 211 U. S. 507.

Fraud is never presumed, and when alleged must be clearly made out. Where cancellation of a patent is sought on the ground of fraud, the proof of the fraud must be clear and convincing.

It is conceded that the statute specially required that the entrymen should have actually resided on the land three years. Therefore, proof that the entryman in any of the cases had resided on the land but one year, or one and one-half years, was immaterial, because, if true, it would not furnish to the officers any excuse for issuing a final receipt or patent; and it therefore became immaterial whether the representations made by the entrymen as to the time and character of their residence, and as to their intent to make the land their home, were true or false. *Slaughter's Administrator* v. *Gerson,* 13 Wall. 379, 383, 385; *King* v. *Lamborn,* 186 Fed. 21, 28; *Ming* v. *Woolfolk,* 116 U. S. 599, 602; 14 Am. & Eng. Enc. of Law, 59; Bigelow on Fraud, p. 139; *First National Bank* v. *Osborne,* 18 Ind. App. 442; *Furneaux* v. *Webb,* 33 Tex. Civ. App. 560; *Russell* v. *Branham,* 8 Blackf. 304; *Prince* v. *Oberholser,* 75 Wis. 646; *Platt* v. *Scott,* 6 Blackf. 389; *Robbins* v. *Hope,* 57 Cal. 496; 2 Kent Com., 4th ed., pp. 484, 485; *Silver* v. *Frazier,* 85 Mass. 382; *Missouri Lincoln Trust Co.* v. *Third National Bank,* 154 Mo. App. 89; *Hall* v. *Johnson,* 41 Mich. 286; *Conway* v. *United States* 95 Fed. 615, 618.

In some jurisdictions, evidence of sales of land of like quality in the immediate neighborhood is permitted, while other courts refuse to allow testimony of this character,—among the latter, California, Iowa, Kansas, Minnesota, Nebraska, New York, Ohio, and Pennsylvania. See *Neely* v. *Western Allegheny R. R. Co.,* 219 Pa. St. 349; *Pittsburgh & Western R. R. Co.* v. *Patterson,* 107 Pa. St. 461; *Kansas City &c. R. R. Co.* v. *Weidenmann,* 77 Kan.

300. This question has not been directly passed on by this court; the nearest approach is the case of *Kerr* v. *South Park Commissioners,* 117 U. S. 379.

In order to support the allegations in the complaint, the action of the entrymen must have been intentionally wrong and fraudulent. If they were acting under an honest mistake of the law, they were not endeavoring to deceive the Government.

A period of about eighteen years had expired from the time of the issuance of the final certificates until the trial of the case. The Government had allowed the six years to go by without bringing a suit to cancel the patents, although it was fully advised, as shown by the record, very shortly after the patents were issued, when it canceled the entries of other settlers to land entered and proved up at or about the same time. To permit it to collect interest as a matter of right would be inequitable and unjust. In any event, this question of interest should have been submitted to the jury, and it was error for the court to direct them to return interest upon any sum that they might determine was the value of the land taken. *Eddy* v. *Lafayette,* 163 U. S. 456, 467; *White* v. *United States,* 202 Fed. 501.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. H. L. Underwood* were on the brief, for the United States.

It is not necessary that the false representation should have been the sole inducement. *Safford* v. *Grout,* 120 Mass. 20, 25; *Windram* v. *French,* 151 Mass. 547, 553; *Jordan* v. *Pickett,* 78 Ala. 331, 338, 340; *Winter* v. *Bandel,* 30 Ark. 362, 373; *Addington* v. *Allen,* 11 Wend. 374, 381; *Fishback* v. *Miller,* 15 Nev. 428, 442; *James* v. *Hodsden,* 47 Vt. 127, 137; *Clarke* v. *Dickson,* 6 Com. Bench (N. S.) 452; *Sioux National Bank* v. *Norfolk State Bank,* 56 Fed. 139, 141; *Tooker* v. *Alston,* 159 Fed. 599, 603, 604; *Cabot* v. *Christie,* 42 Vt. 121, 127.

There was ample evidence to support the finding of the jury that defendant was guilty of the fraud charged against him.

Defendant's action as to other matters of like nature was relevant in establishing his motive or intent in this case. Moreover, a reasonable discretion is allowed the trial court in letting in such evidence. *Wood* v. *United States,* 16 Pet. 342, 347, 349, 360; *New York Mutual Life Insurance Co.* v. *Armstrong,* 117 U. S. 591, 598, 599; *Moore* v. *United States,* 150 U. S. 57, 60, 61; *Exchange Bank* v. *Moss,* 149 Fed. 340, 341.

In establishing the value of land, evidence may be received of the value of nearby similar land, or of sales of such land not too remote in point of time, and evidence regarding sales is not incompetent because based upon hearsay, or knowledge obtained by one in the course of business, or through such sources as are commonly relied upon in such transactions. *Cliquot's Champagne,* 3 Wall. 114, 141; *Montana Ry. Co.* v. *Warren,* 137 U. S. 348, 352, 353; *Virginia* v. *West Virginia,* 238 U. S. 202, 212; *Sanitary District* v. *Boening,* 267 Ill. 118, 121, 122; *Whitney* v. *Thacher,* 117 Mass. 523, 527; *Fourth National Bank* v. *Commonwealth,* 212 Mass. 66, 68; *Erk* v. *Simpson,* 137 Ga. 608, 613; *Betts* v. *Southern California Exchange,* 144 Cal. 402, 409; *Lynch* v. *United States,* 138 Fed. 535, 538, 539.

Interest may be allowed in cases of tort. *Lincoln* v. *Claflin,* 7 Wall. 132, 139; *Eddy* v. *Lafayette,* 163 U. S. 456, 467; *District of Columbia* v. *Robinson,* 180 U. S. 92, 107, 108; *Bates* v. *Dresser,* 251 U. S. 524, 531. That the question of its allowance is for the discretion of the jury, is undoubtedly supported by the decisions of this court cited; but it is not clear that the court did not by its charge intend to indicate to the jury that interest was to be allowed in its discretion. *Wilson* v. *Troy,* 135 N. Y. 96, 103.

Moreover, interest is allowable as a matter of right in a case of conversion, and we can perceive no valid reason why it should not be allowed when one's real property is wrongfully taken.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit brought by the United States to recover the value of lands that it alleges it was induced to part with through the defendant's fraud. The lands concerned had been in the Siletz Indian Reservation in Oregon and had been thrown open to homestead entry by the Act of August 15, 1894, c. 290, § 15, 28 Stat. 286, 326. In addition to the usual fees a payment of $1.50 per acre was required, and three years' actual residence on the land was to be established by such evidence as was required in homestead proofs. The complaint alleges that the defendant, with intent to acquire title to the lands mentioned for himself and associates, procured certain old soldiers, named, to make homestead applications and entries upon land pointed out by him, each previously signing an agreement with him by which for his information and services in drawing papers and affidavits the entryman was to pay him $185; the entryman was to employ him to build a home upon the land, paying him for that $100, and to clear or cultivate the land so far as required by the laws in order to perfect title, paying him for that $175. The entryman agreed to comply with the laws as to residence and the defendant agreed to do all the work required. The defendant agreed to advance, if required, not exceeding $60 for the fees of the land office, and, after final proof, at the option of the entryman, to procure a loan not to exceed $720, to be secured by a first mortgage on the claim, all payments stipulated from the entryman then to become due and to be payable out of the loan, or if there was no loan to be paid upon final

proof, which was to be made as soon as the laws had been complied with.

It is alleged that the agreement was intended by the defendant to conceal his intent to acquire title to the land; that the entryman did not intend to establish a residence upon the lands so entered and that the defendant knew that they did not intend to and intended that they should not. The complaint goes on to allege fraudulent proofs made by the defendant's procurement, the issue of final certificates and subsequently of patents, in ignorance of the fraudulent character of the entries, the defendant in each case having received a mortgage as agreed. The answer admits the contract, denies all fraud and sets up that the final proof of the entrymen disclosed that they had not resided for three years upon the land as required by the Act of August 15, 1894, it then being supposed by everyone that soldiers were allowed to count their time of service, as by Rev. Stats., §§ 2304, 2305. The facts are admitted, and it is pleaded and argued that the issue of patents by officers of the United States with knowledge of these facts was due to a mistake of law for which the defendant could not be held responsible. The defendant pleaded some other matters to which it is not necessary to refer, including the fact that the causes of action did not accrue within six years—a defence that is not pressed here. See *United States* v. *Jones,* 218 Fed. 973; 242 Fed. 609, 616.

After the skirmishes reported in the two volumes of the Federal Reporter the case came on for trial and resulted in a verdict for the plaintiff for $18,204.84. The judgment of the District Court was affirmed by the Circuit Court of Appeals. 265 Fed. 235. The first question argued there, as here, was whether the knowledge attributable to the United States that the entrymen had not been upon the land three years is a bar to a recovery. We agree with the Circuit Court of Appeals that it is not

necessarily a bar. If the defendant is responsible for fraudulent representations of intent to establish a residence and to fulfill in good faith the other requirements for a homestead, and those representations induced the issue of the patents, knowledge of another fact that also would have prevented the issue but for a mistake of law does not take the right to recover away. We can see no reason why failure through ignorance of law to insist upon an independent ground for refusal should deprive a party to a bargain of its rights upon other grounds, or of its right to require good faith in regard to them. An express waiver would have no such effect.

The defendant presents the case as if the only fraudulent representations charged were that the entrymen had been upon the land for a year or year and a half whereas in fact they were there much less, and then presses the argument that the falsity of such statements was immaterial because the statement as made disclosed the entrymen's want of right. But as we have implied, the charge of the Government goes much farther, and if the evidence as a whole tended to show the fraud that was charged, perjury as to the duration of residence would be a fact to be considered, especially if the time of residence fixed in the affidavits satisfied what everyone then thought were the requirements of the law.

We may assume for the purposes of decision that the agreement and mortgage were not unlawful on their face and that the defendant took pains to make them known to the authorities; but obviously they might be made an instrument for the scheme alleged. They were prepared in contemplation of a plan to collect old soldiers for the purpose of making entries, the defendant paying an agent five dollars a piece for every contract brought in. The defendant admitted that he looked to the land not to the soldiers as his security and that he supposed the soldiers would sell the land to pay their debt to him. The

land was timber land.   There was evidence that the soldiers were not intending to make their residence upon it; that the agent employed to get their contracts knew that they were not intending to; that the defendant treated the intent as matter of indifference, and in his conversations with the agent indicated an expectation .to get the land for himself or his nominees without .the need of a preliminary contract to sell to him.   He did get four of the nine parcels.   Without going into details it is evident from the way in which the whole business was transacted that all hands proceeded· on the notion that if the entry-men put in a periodical appearance on the land they would ·get it, and that no one troubled himself about actual intent provided .the affidavits were in due form.   It is impossible to say that the evidence did not warrant finding the defendant guilty of fraud.

Some questions are raised as to the admissibility of evidence.·  The first concerns the introduction by the Government· of similar arrangements with soldiers' widows to file claims on· land in the Siletz Indian Reservation without settlement.   If the Court in its discretion did not regard the evidence as too remote or as raising too lengthy . or complex collateral issues, it properly might admit the facts as bearing on knowledge and intent, even ̄if afterwards the defendant gave an explanation that the jury might deem satisfactory.   So as to similar transactions with other soldiers.   So as to .the defendant's conduct with regard to contracts upon similar claims, although the evidence upon this point can have had but little weight on either side.   The· other ·question is upon the admission of certain testimony as to value.   The land as ·we have said was timber land.   There seems to have been no sales in the township where it lay, and timber experts knowing by experience and report current rates· in adjoining townships were allowed to state them.   Without

going into the specific questions asked it is enough to say that we have examined them and find them all to have been well within the discretion of the Court. See *Virginia v. West Virginia,* 238 U. S. 202, 212. As the value found by the jury was very near to that set by the defendant, if not the same, we hardly see why the objection should have been pressed.

The only occasion for difficulty or doubt is an instruction by the Court to the jury that if they found for the plaintiff the measure of damages was the market value " with legal interest at six per cent." from the date of the final certificates to that of the trial. The Circuit Court of Appeals disposed of this by saying that the attention of the Court was not called to the question of interest. The bill of exceptions states that the defendant excepted to that part of the instruction, while on the other hand the transcript of the proceedings in Court so far as intelligible would indicate that the Circuit Court of Appeals was right. The usual rule in tort cases has been to leave the question of interest to the jury. *Lincoln* v. *Claflin,* 7 Wall. 132, 139. *Eddy* v. *Lafayette,* 163 U. S. 456, 467. But when the wrong consists of depriving the owner of property having a definite or ascertainable value there would seem to be the same reason for allowing interest as if there had been a misappropriation of money. The discretion of the jury does not mean the right to gratify a whim or a personal fancy. An indication of opinion on the part of the judge certainly would have been allowable, *Graham* v. *United States,* 231 U. S. 474, 480, and the tendency of late cases in this country is to sustain the ruling. *Shaw* v. *Gilbert,* 111 Wisc. 165, 196. *Fell* v. *Union Pacific Ry. Co.,* 32 Utah, 101. *New York, Chicago & St. Louis Ry. Co.* v. *Roper,* 176 Ind. 497, 509. *Wilson* v. *Troy,* 135 N. Y. 96, 104. *Drumm-Flato Commission Co.* v. *Edmisson,* 208 U. S. 534, 539. See *Mobile & Montgomery Ry. Co.* v. *Jurey,* 111 U. S. 584, 596. *New York, Lake*

*Erie & Western R. R. Co.* v. *Estill*, 147 U. S. 591, 619, 622. St. 3 & 4 Wm. IV, c. 42, § 29. In the circumstances of this case we are of opinion that the judgment must stand.

*Judgment affirmed.*

MR. JUSTICE PITNEY was absent and took no part in the decision.