SEBASTIAN BRIDGE DIST. v. HEDRICK. ELKAN v. SEBASTIAN BRIDGE DIST. FIDELITY & DEPOSIT CO. OF MARYLAND v. SAME.*

(Circuit Court of Appeals, Eighth Circuit. February 3, 1925.)

Nos. 6629, 6659, 6660.

I. Estoppel ⬥3(2)—Complainant held estopped to claim for itself a sum claimed in its pleadings for the benefit of another.

Where complainant, in a suit to recover, inter alia, liquidated damages provided in the contract for delay by a contractor in completing a bridge, included in its bill a claim for liquidated damages expressly provided for in the contract for the benefit of the engineers, which provision was set out, it holds the amount recovered thereunder as trustee for them, and is estopped by its pleading to claim it for itself.

2. Interest ⬥19(1)—Allowance in equity is within discretion of court.

On recovery in equity by a bridge district against a contractor and his surety for the additional cost, above the contract price, of a bridge which was completed by a second contractor after the first contract was canceled, allowance of interest from the time the bridge was completed and the district paid for it held not only within the discretion of the court, but proper.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit in equity by M. M. Elkan against the Sebastian Bridge District, with cross-bill by defendant against complainant, and the Fidelity & Deposit Company of Maryland, wherein Ira G. Hedrick intervened. From the decree, the Sebastian Bridge District, Elkan, and the Fidelity & Deposit Company each appeal. Modified, with direction to enter final decree on remand.

James B. McDonough, of Ft. Smith, Ark., for Sebastian Bridge Dist.

Henry L. Fitzhugh, of Ft. Smith, Ark. (John D. Arbuckle and Joseph M. Hill, both of Ft. Smith, Ark., on the brief), for Hedrick.

Vincent M. Miles, of Ft. Smith, Ark. (Thomas B. Pryor, of Ft. Smith, Ark., on the brief), for Elkan and Fidelity & Deposit Co. of Maryland.

Before KENYON, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

TRIEBER, District Judge. The three appeals were heard together on one record. This is the second appeal of this cause. The opinion in the former appeal will be found in 291 Fed. 532, where the 'facts are set out, and need not be again stated in this opinion, except as to the proceedings after the mandate from this court on the former appeal.

The decree from which the first appeal was taken found the contractor M. M. Elkan liable for the cost of the construction of the bridge, as estimated at the time of the hearing, in excess of the contract price, and for liquidated damages for the benefit of the bridge district and for the use of its engineers, as provided in the contract. The decree was also against the Fidelity & Deposit Company, his surety, for the performance of his contract. This court affirmed the decree, except that it was held that the trial court "should have made allowance to the contractor, as extras, the expenses in reconstructing the cofferdam and for pumping expenses in connection with the last order made by the engineer concerning construction of pier No. 2." It was further held in the opinion that, "by the terms of the contract which was

*Rehearing denied March 5, 1925. Certiorari denied 45 S. Ct. 510, 69 L. Ed. ——.

made when Elkan stopped work, the bridge was to have been completed in August, 1921. It has doubtless been completed by this time, so that, on a retrial on this demand, evidence will be forthcoming as to the actual, instead of the estimated, loss of the district."

On the hearing, after the remand, the trial court proceeded in conformity with the directions of the mandate and opinion, and rendered a decree in favor of the Sebastian bridge district against M. M. Elkan for $328,103.99, the difference found by the court between the contract price and the cost of the bridge, less a credit of $600 for extra work on pier No. 2, and as liquidated damages $21,600 for delay in the completion of said bridge, and the further sum of $14,400 for the use and benefit of Ira G. Hedrick, surviving partner of Hedrick & Hedrick, engineers, on account of the same delay, with interest at the rate of 6 per cent. from May 5, 1922. It also rendered a decree against the surety company for the penalty of its bond, $200,000, and interest from May 5, 1922, the date of the completion of the bridge and final payment therefor to the contractor to whom the contract was let after the construction had been abandoned by Mr. Elkan, the original contractor.

The decree further provided that the judgment is for the benefit of the bridge district and the said Ira G. Hedrick as surviving partner in the proportions of the recovery from the parties, and that the amount of the judgment against the Fidelity & Deposit Company, when paid, be credited on the judgment against M. M. Elkan.

No. 6629 is an appeal by the bridge district from that part of the decree requiring the district to prorate with Mr. Hedrick. Nos. 6659 and 6660 are appeals by Mr. M. M. Elkan and the Fidelity & Deposit Company.

### No. 6629.

[1] The only question necessary for a decision on this appeal is whether the appellee Hedrick is entitled under the contract of the bridge district with Mr. Elkan to share with it in proportion to the amount decreed in favor of the district against M. M. Elkan and the Fidelity & Deposit Company for the liquidated damages? For convenience the Sebastian bridge district will be referred to as the district, and the Fidelity & Deposit Company as the surety company.

The contention of counsel for the district is that under the contract of the engineer with the bridge district he is only entitled to .5 per centum of the cost of the construction

of the bridge, and, having been paid the 5 per centum, he is not entitled to any part of the liquidated damages awarded against Elkan or the surety company. The contract by the district and Mr. Elkan, the contractor for the construction of the bridge, contained the following provision:

"The contractor further agrees to start work as soon as is practicable after the execution of this contract and to prosecute the work at such a rate as to complete the structure within fifteen (15) months from the date of this contract, and should the work not be completed within the time specified the district shall have the right to deduct from the contractor's total compensation the sum of thirty dollars for each day the work is so delayed, and in addition to the above sum the contractor also agrees to pay to the engineers of the district the sum of twenty dollars per day for each day the completion of the work is delayed beyond the said term of fifteen months: Provided, however, that the contractor may present claims to the district for delays for causes beyond his control as set forth in clause F, page 25, of the accompanying specifications."

The surety's bond provided: "The conditions of this obligation are that, if and when the said M. M. Elkan shall fully perform all of his obligations as set forth in his contract with the Sebastian bridge district under date February 5, 1919, then this obligation shall cease and become null and void; otherwise, it shall be and remain in full force and effect."

The liquidated damages for the benefit of the engineers were clearly intended as additional compensation for being required to render their services for a longer period than was provided by the contract for the completion of the bridge by the contractor. But, even were this provision doubtful, the district would be estopped. The original answer and counterclaim of the district did not seek to recover the $20 a day for the benefit of the engineer, but on November 29, 1920, before the first hearing of the cause, it amended its counterclaim, by leave of the court, as follows:

"This defendant alleges that in the specifications, which are a part of the contract between plaintiff and defendant, and under the head of liquidated damages and on page 25 of the contract appears a provision giving and allowing damages for the benefit of the engineer the sum of $20 per day, for engineering expenses from and after the date of the completion of the contract. The defend-

ant alleges that said sum of $20 per day is a part of the liquidated damages which the defendant herein is entitled to recover from the plaintiff herein and the surety on his bond. The said defendant therefore prays for judgment in addition to the other prayers of the complaint for said sum of $20 per day."

When the district in its counterclaim asked for these liquidated damages, and the claim is for liquidated damages (Robinson v. United States, 261 U. S. 486, 43 S. Ct. 420, 67 L. Ed. 760), it made itself a trustee for the engineer, and, having recovered judgment for the claim, it is clearly bound in equity and good conscience to pay the amount, as and when collected, to its cestui que trust, even if there had been no affirmance of that part of the original decree in the former appeal. It was, beyond question, estopped by its own pleadings. Davis v. Wakeley, 156 U. S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578; Iron Gate Bank v. Brady, 184 U. S. 665, 22 S. Ct. 529, 46 L. Ed. 739; Great Falls National Bank v. McClure, 176 F. 208, 99 C. C. A. 562; Jefferson Standard Life Insurance Company v. Wilson, 260 F. 593, 596, 171 C. C. A. 357; Nichels v. Pullman Co. (D. C.) 268 F. 610, 619; Quarles v. City of Appleton (C. C. A.) 299 F. 508, 516 (7th C. C. A.).

Besides, the decision of this court on the former appeal, affirming that part of the decree, is now the law of the case. By what right can the district claim this compensation provided by the contract for the benefit of the engineer? The decree in favor of Mr. Hedrick is right, and is affirmed, except as modified later in this opinion.

In Nos. 6659 and 6660, the appeals of Mr. Elkan and the surety company, we are of the opinion that the court erred in some of the items. The court allowed him a credit of only $600 for the extra work on pier No. 2 performed by direction of the engineers of the district. It adopted the estimates of the work on the testimony of the engineer only, disregarding that of Mr. Elkan, the contractor, and of John Smith, his superintendent in charge of the construction of that work. His estimate of this work was $480; he then added 10 per cent. as profit, which made $528; and evidently "for good measure" he called it $600. Ordinarily the finding of the trial judge on conflicting testimony will not be set aside by an appellate court, unless it is clearly against the weight of the evidence. In the instant case we are of the opinion that it is so. The evidence of Mr. Hedrick on this estimate does not impress us as a correct estimate of the cost of the extra work on pier No. 2, in view of the evidence of Mr. Elkan and Mr. Smith.

Besides, his original estimates of the cost of the construction of the bridge, and again when the contract was let to the Missouri Valley Bridge & Iron Company, to complete it, were so much less than the actual cost, that we do not consider his estimates as a safe basis to determine proper compensation for the work on pier No. 2. His original estimate as to what the cost of construction would be, was $544,498.50, when in fact it cost $866,071.49, a difference of $321,572.99. His estimate to finish it, after the Elkan contract had been canceled, was $80,000, and the actual cost was $329,071.49, a difference of $249,071.49. Mr. Elkan testified:

"We had excavated to the hard blue shale as per the plans. According to the plans, there was footing to go into this hard blue shale three or four feet deep and, when Mr. Hedrick saw this rock, he said it was hard enough; that there was no need of getting this footing. He ordered us to pour the concrete, just get a little deeper, like we had in 1, and pour the concrete without putting in this footing. This footing shows on sheet No. 2. Well, after we had poured this, pouring the entire footing or foundation, poured it up to or out of danger from water, we started pulling the sheet piling and had probably one-third of the sheet piling pulled. We had the framework built up to the spring line of the arch. We had all the steel set in this framework and was ready to concrete, when Mr. Hedrick came down and told us that he had made this mistake and ordered this change made. At that same time, on that same trip, is when he gave the order that the same mix should be a 1-2-4 and that it should be poured continuous. When he gave the order, there was nothing else for us to do but to carry out his instructions. Now, we had to build a sandbag dam. He told us that he had made the mistake, and he gave us a mixture of what he wanted us to do to strengthen that pier, and that called for additional concrete and working again down to the original foundation. That meant that we had to protect again against the water— had to bring our pumps back—and we built a sandbag dam. We couldn't drive piles any more; the work was in such a condition, we couldn't well drive well; and we figured the most economical way to do the work was to build sandbag dams around it, which we did.

"Mr. McDonough: That was at pier No. 2.

"Pier No. 2. Then we started the work to try to get 500 yards of gravel together, and we were getting it from the traction company, crushed stone, and getting it wherever we could, but before we could get this 500 yards to make a continuous pour, we got another freshet and our sandbag dam was washed away, and the steel piling that had been left in No. 5 hadn't been pulled yet, was very badly bent up, due to fact that the logs and things could get into the openings and the hole was filed up and the greater part of the crushed stone and gravel that we had on hand was either washed away or was filled with sand and dirt to that extent that he would not permit us to us it. Now, I call Mr. Hedrick's attention to that."

Mr. Smith testified to the same effect. He testified as follows:

"With reference to the changes in pier No. 2, that when they struck the rock Mr. Hedrick saw how hard the rock was and told them that it was not necessary to excavate in the rock for the pier as shown on sheet 6 of the plans of the details of pier No. 2; that Mr. Hedrick told him that the rock was hard enough to pour the concrete right on it without making the excavation as shown on sheet 6, details for pier No. 2; that they then poured the concrete as directed by Mr. Hedrick, without making the excavation, and drew their cofferdam; that Mr. Hedrick later told him that they had made a mistake on that pier, and that the extra concrete should have gone in, and that the excavation would have to be made; that he had overlooked the fact that this was a pivot pier which had to carry an extra load, and that after he got back to his office in Kansas City he figured it out, and that they had to pour additional concrete and support pier No. 2; that he had taken out one-third of the piling and the cofferdam was full of water; that they had to redrive the piling again, emptying the cofferdam in order to pour the concrete; that the engineer directed that all the additional concrete in pier No. 2 be in a continuous pour; and that in order to do that it was necessary to have on hand at the side of the pier 400 or 500 yards of gravel; that there was nothing in the specifications calling for a continuous pour, and that in their efforts to gather enough material on this one spot to make a continuous pour they were unable to do any work until high water came, which washed away the material and refilled the cofferdam. Exhibit 'U' (R. 1246) shows pier No. 2 as changed."

One of the claims included in Mr. Elkan's itemized statement is an overhead charge amounting to $16,037.50, and 10 per cent. as his profit, amounting in the aggregate to $17,641.50, being one-half of his general overhead expenses while employed on pier No. 2, and other contracts. What the other contracts were is not shown. The total claim of Mr. Elkan for this work, including the overhead expenses, was $20,648.10. This part of his claim should be disallowed especially in view of the fact that he included in the other estimate of cost "$108 for insurance, office expense, and overhead." The amount which he is entitled to for this extra work we find to be $3,006.85.

We are also of the opinion that the court erred in charging Mr. Elkan with the liquidated damages due the district and engineer up to May 5, 1922, when the bridge was finally accepted as completed by the last contractor. The contract with the Missouri Valley Company provided that the construction should be completed within one year from its date. This required the completion by August 1, 1921. The fact that for reasons satisfactory to the district the time was extended until May 5, 1922, is no reason for charging the contractor with $50 a day, $30 for the district, and $20 for the engineers, as liquidated damages. The former decree awarded as such damages to the district for its use $11,730 and for the benefit of the engineer $7,820, or in the aggregate $16,450, less than is awarded by the decree now before us.

In our opinion the liquidated damages should not be for a greater time than until August 5, 1921, when under the contract with the second contractor, the construction of the bridge should have been finished. That would make the delay 450 days, which would entitle the district to $13,500, and the engineer to $9,000.

[2] It is also contended that the court erred in allowing interest on the amounts awarded, from May 5, 1922, the time the bridge was finally completed, and the money therefor paid by the district. We are of the opinion that it is proper that interest should be allowed on the amount found due. It is unnecessary to determine in this case whether, if this were an action at law, interest could be recovered. But see Jones v. United States, 258 U. S. 40, 49, 42 S. Ct. 218, 66 L. Ed. 453, and McWilliams v. Excelsior Coal Co., 298 F. 884, 889, decided by this court in an action arising in the state of Arkansas, and the Arkansas authorities there cited.

But, aside from this, this is a proceeding in equity, and it is always in the discretion

of the chancellor whether to allow interest. We fail to find any abuse of that discretion. When the district was required to pay the contractor, at the completion of the bridge, it was deprived of the use of that money, which it had borrowed by issuing interest-bearing bonds, as authorized by the act creating the district. But for the default of the contractor and the wrongful delay by reason of this extended litigation, the district could have saved that interest. Jones v. United States, 258 U. S. 40, 49, 42 S. Ct. 218; Cooper v. Hill, 94 F. 582, 588, 36 C. C. A. 402, and authorities there cited; Equitable Trust Co. v. Central Trust Co., 145 Tenn. 148, 239 S. W. 171.

As this cause has been pending for a number of years, and this is the second appeal, we deem it best to have a final decree entered upon the remand. The decree to be entered will provide that the district recover from the appellant Elkan the difference of cost of the bridge $328,103.99; as liquidated damages we find the district is entitled to recover from him for its own benefit $13,500; and for the benefit of Mr. Hedrick $9,000 —$350,603.99; less for construction of pier No. 2 $3,006.85; total $347,597.14, with interest at the rate of 6 per centum per annum, from May 5, 1922, to the date of the entry of the decree in the court below; that of said sum the sum of $9,000 is to be paid to Mr. Hedrick, with interest at the rate of 6 per centum per annum from May 5, 1922, if the entire judgment against Mr. Elkan is collected, otherwise he is to be paid in the proportion of the amount adjudged for his benefit to the amount collected on the decree; that the district recover from the Fidelity & Deposit Company the full penal sum of $200,000, with interest at the rate of 6 per centum per annum from May 5, 1922. If the decree against the Fidelity & Deposit Company only is collected, the district be required to pay to Ira G. Hedrick, as surviving partner of Hedrick & Hedrick in the same proportion as if collected from Mr. Elkan.

The decree should provide that in no event shall the district recover from Mr. Elkan and the surety company a greater sum than the judgment against Mr. Elkan. The costs of this court will be apportioned, one-half against M. M. Elkan and the surety company jointly, one-fourth against the bridge district, and one-fourth against Ira G. Hedrick as surviving partner of Hedrick & Hedrick. The apportionment of the costs of the court below is left to the discretion of that court.