IRA M. PETERSIME & SON v. ROBBINS.

ROBBINS v. IRA M. PETERSIME & SON.

Nos. 1296, 1297.

Circuit Court of Appeals, Tenth Circuit.

Jan. 13, 1936.

296

Rowan A. Greer, of Dayton, Ohio (H. A. Toulmin and H. A. Toulmin, Jr., both of Dayton, Ohio, on the brief), for Ira M. Petersime & Son.

Robert D. Charlton, of Denver, Colo. (Raymond Ives Blakeslee, of Los Angeles, Cal., and Van Cise & Robinson and Philip S. Van Cise, all of Denver, Colo., on the brief), for John L. Robbins.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

Ira M. and Ray Petersime as partners, residents and citizens of Ohio, sued John L. Robbins of Colorado alleging infringement of plaintiffs' Letters Patent for improvements in incubators. Robbins denied infringement, pleading the usual defenses in such cases. He also set up a counterclaim in which he sought damages against the plaintiffs for alleged unfair trade practices in the sale of incubators.

On final hearing the District Judge on April 30, 1930, found that Robbins had infringed as charged and entered the usual decree against him on that issue. On the other issue the District Judge dismissed the counterclaim as being without merit.

Robbins appealed, and we reversed the action of the District Judge on both issues, except we sustained the decree of infringement against Robbins for two machines which he manufactured early in his experimentation and later destroyed. On mandate the court below entered decree in ac-

cord with our directions. Our opinion is found in 51 F.(2d) 174.

The charges against Petersime of unfair business methods set up in the counterclaim consist of letters written to Robbins' customers and prospective customers characterized as acts intended to intimidate Robbins' customers and which actually did intimidate them and prevent purchases by them of the Robbins incubators. Perhaps the most serious conduct of that kind on the part of Petersime was at the Minneapolis convention at a session of the International Baby Chick Association held during four days in the summer of 1929. Certain documents consisting of letters or telegrams denouncing the Robbins incubator were posted at the exhibition booth of Petersime, open to the view of all in attendance. It is alleged that Petersime initiated and carried on a campaign of unfair competition in restraint of trade directed against Robbins and his business. In our consideration of the appeal we said this as to the counterclaim, 51 F.(2d) 174, 178:

"The proof offered by defendant to sustain his counterclaim tended strongly to support his allegations, but the court immediately on the close of the evidence directed to that issue dismissed the counterclaim for the stated reason that the facts did not support it. The counterclaim charged, in substance, a libel of defendant in his business.

"To be sure, plaintiffs had a right to sue any and all the users of defendant's incubators as long as they acted in good faith, but several letters of plaintiffs' counsel written to defendant's users were more than notices of an intention to sue the addressee as an infringer. They contained demands and were in the nature of threats; and the bulletin board which plaintiffs put up at the Minneapolis exhibition of incubators whereon it posted bulletins consisting of copies of these letters, at which there was a large attendance of prospective purchasers of incubators, was unfair and inexcusable, and according to the proof of defendant caused loss to him of prospective purchasers who were there present. On the proof adduced on that issue defendant, in our judgment, was entitled to some damage from plaintiffs on its counterclaim."

From our decision and judgment on that appeal Petersime & Son petitioned the Supreme Court for writ of certiorari, which was denied. Ira M. Petersime & Son v. Robbins, 284 U.S. 680, 52 S.Ct. 197, 76

L.Ed. 574. Thereupon our disposition of the issues raised by the plaintiffs' bill and the defendant's counterclaim became final.

Thereafter the court below appointed a master to take the evidence and make report on the issues of damages suffered by Petersime because of the two machines that infringed the Petersime·patent, which were made by Robbins and later destroyed, and to also take the testimony and make report of the damage suffered by Robbins because of Petersime's unfair trade practices as alleged in the counterclaim. Petersime introduced no evidence as to their damages on account of the two infringing machines made by Robbins, but expressed their willingness to accept nominal damages, and the master allowed them $1.

In the proceedings before the master the question arose whether Robbins was entitled to recover general damages, or whether he was confined to special damages specifically shown by the proof to have been actually suffered. The master ruled that the charges in the counterclaim were not libellous per se, and that general damages were not recoverable. He took the proof and required Robbins to point out and establish by proof actual losses of sales of incubators due to the conduct of Petersime. Following that course he concluded that Robbins had lost the sale of 27 incubators because of the conduct of Petersime as charged in the counterclaim, which in the aggregate amounted to a loss to Robbins of $17,340.93 to which he added interest at 6 per cent. per annum from the approximate dates on which said sales would have been made.

Both parties excepted to the master's report, Robbins on the ground that he was entitled to general damages in addition to the special damages allowed by the master. The District Judge seems to have been of the opinion that the master was wrong in holding that Robbins was not entitled to general damages, and to correct the claimed error in that respect he added to the amount found by the master $2,500 as general damages. In all other respects he approved the master's report.

The query, whether spoken or written accusations that clearly tend to detrimentally affect one in his business are to be regarded as actionable per se and thus the basis of general damages, has been given much consideration. National Refin-

ing Co. v. Benzo Gas Motor Fuel Co. (C.C.A.) 20 F.(2d) 763, 55 A.L.R. 406; Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories (C.C.A.) 17 F.(2d) 255, 52 A.L.R. 1187; Maytag Co. v. Meadows Mfg. Co. (C.C.A.) 45 F.(2d) 299, certiorari denied 283 U.S. 843, 51 S.Ct. 489, 75 L.Ed. 1452; Davis v. Bakewell (C.C.A.) 255 F. 960; Sternberg Mfg. Co. v. Miller, Du Brul & Peters Mfg. Co. (C.C.A.) 170 F. 298, 18 Ann.Cas. 69; International Text-Book Co. v. Leader Printing Co. (C.C.) 189 F. 86. Many other cases federal and state might be cited. We find it unnecessary here to pass upon the point for the following reasons: As already said, the master required specific proof that named persons who intended to purchase the Robbins incubator declined to do so solely because of the alleged acts of Petersime. In his report he names the persons who declined to purchase for that reason. He took and reported other proof as to other kinds of damage which Robbins claimed he had sustained, and that proof designates specifically such other damage. It is as specific as to such other damage as was the proof supporting losses of sales allowed by the master. The proof shows that the Robbins incubator was favorably regarded by incubator users generally. The conduct of Petersime dampened the inclination of prospective customers to make purchases, and to overcome that feeling in part at least pending litigation Robbins sold more than 100 machines at an approximate reduction in price of $200 each. In some instances he also gave purchasers a guaranty against loss. He issued circulars at a cost of between two and three thousand dollars "to ease the minds of prospective purchasers," went to see some of them himself, and sent his agents to other prospective purchasers who were hesitant because of Petersime's conduct. On some sales made prior to the Minneapolis convention he had difficulty in making collections. Payments were held up because of what occurred there. We see no reason why those expenses, losses and outlays should not be considered as special damages, as much so as the special damages allowed by the master in his report. They were in excess of the $2,500 allowed and added by the District Judge. The error of the District Judge, if any, was in definition and not in substance. He might have allowed more as specifically proven. Story Parchment Co. v. Paterson Parchment Pa-

per Co., 282 U.S. 555, 51 S.Ct. 248, 75 L. Ed. 544.

■ It is further contended here by Petersime & Son that they were not responsible for the posting of the notices at the booth where the Petersime incubator was on exhibition at the Minneapolis convention, because that posting was done by G. L. Derr, an employe of a sales agent, one Smith, who was an independent contractor for the sale of the Petersime incubator. That proposition was urged before the master. The master ruled the point against Petersime, and in so doing said:

"I find no specific denial of the charge of posting in plaintiffs' answer to defendant's counterclaim.

"In paragraph 10 of the counterclaim defendant expressly charged that the telegrams were posted 'by the said Derr on behalf of the plaintiff.'

"In paragraph X of plaintiffs' answer, which paragraph seems specifically to answer paragraph 10 of the counterclaim, this statement is not denied. At the conclusion of the answer is a general denial of each and every allegation not specifically answered.

"Ray Petersime, one of the plaintiffs, testified that he arrived at the convention on the second day. That he knew the telegrams were posted by G. L. Derr, and they were posted when he arrived there and first attended the convention, and he ordered them removed. But he also testified on cross-examination that they were on the bulletin board of the convention until the afternoon of the fourth day when they were removed. It thus appears that the telegrams remained posted from the second to the fourth day of the convention, and that they were permitted to be left there by one of the plaintiffs.

"I find that plaintiffs are responsible for the posting and consequent publicity given to these telegrams at the convention."

The master found further that plaintiffs admitted sending through their counsel the four telegrams to G. L. Derr, which were posted.

■ Petersime excepted to the allowance of interest by the master. The master in making the allowance considered the point. He relied on Sebastian Bridge District v. Hedrick (C.C.A.) 4 F.(2d) 346, Jones v. United States, 258 U.S. 40, 42 S.Ct. 218, 66 L.Ed. 453, and Cooper v. Hill (C.C.A.) 94 F. 582. They seem to support his ruling.

No other point relied on here by either party seems to require consideration.

Affirmed.