THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* BETTINA, KNOWN AS FRANCISCA LAMBOGLIA BENN ET AL., Defendants and Appellees.

No. 10102. Argued January 9, 1950.—Decided January 24, 1950.

*Vicente Géigel Polanco, Attorney General, Carlos J. Faure* and
*Antonio Riera,* for appellant. *F. M. Susoni, Jr., Ernesto
Agostini,* and *Pablo Defendini,* for appellees.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In 1946 The People of Puerto Rico on behalf of the Land Authority filed a suit to condemn 168.2339 cuerdas of land for distribution among "agregados". The plaintiff estimated the value of the land at $14,466.24 which it deposited in the district court. After a trial on the merits, the lower court found that the land was worth $24,492.88 when condemned,

and ordered the plaintiff to deposit the additional sum of $10,026.64, with 6% from the date of condemnation. The People appealed, assigning three errors.

 The first assignment is that the lower court erred in admitting as rebuttal testimony offered by the defendants a certificate of the Registrar of Property showing the sales of two other parcels of land and the prices paid therefor. The appellant contends that such proof is admissible only on a showing that the sales were voluntary, recent and of similar properties. In addition, the People contend that both the deed, if it had been offered, and the certificate of the Registrar are hearsay evidence of the sales prices, which can be established only by testimony of individuals with personal knowledge and who are subject to cross-examination. We assume the certificate was improperly admitted, both as to form and substance, if it was admitted to show recent voluntary sales of similar properties in support of the defendants' theory of the market value of the condemned land.[1] But that is not what occurred here.

The only witness of the government who testified as to the market value of the land condemned stated on cross-examination that in determining market value, he ordinarily took into consideration recent sales of similar properties; but that he was informed at the Registry of Property of Guayama that no recent sales in the location of the condemned land had been recorded in the Registry.

On rebuttal, counsel for the landlord offered the certificate in question which shows that two parcels bounding the

---

[1] See *People* v. *Carmona et al, ante,* p. 292; *Jones* v. *United States,* 258 U. S. 40, 49; *Ramming Real Estate Co.* v. *United States,* 122 F.(2) 892 (C.A. 8, 1941); *Loughran* v. *United States,* 64 F.(2) 555 (C.A. D.C., 1933); *United States* v. *Meyer,* 113 F.(2) 387 (C.A. 7, 1940); *United States* v. *Nickerson,* 2 F.(2) 502 (C.A. 1, 1924); Orgel on Valuation under Eminent Domain, § 134 *et seq;* 2 Nichols on Eminent Domain (2 ed.) § 455 *et seq;* 1 Bonbright, Valuation of Property, pp. 136–37; 2 Lewis on Eminent Domain, 3rd. ed., § 662 *et seq.* Cf. *United States* v. *The Toronto, Hamilton and Buffalo Navigation Co.,* 338 U. S. 396,

property condemned were sold at certain specified prices in 1941. When counsel for the appellant objected to its admission on the grounds already indicated, the following took place:

"Hon. Judge:

"The legal situation created by virtue of this evidence is the following: the last witness, the expert Olano, testified that in order to arrive at the determination of the value of this property as fourteen thousand odd dollars, he did not take into consideration the price of recent sales of adjacent properties as he went to the registry and they advised him at that office that there had been no recent sales of land adjacent to the land in litigation.

"Lcdo. Navarro:

"And that is true because this is a sale in 1941.

". . . . . .

"Lcdo. Defendini:

"Will you permit two words? If we are not permitted to present this documentary evidence, we will be bound by the testimony of the witness that no sale of property in the region of the condemned land appears in the Registry of Property and this would be wholly unfair; as we wish to detract from the testimony of the witness which prejudices us with this documentation."

The court thereafter ruled that "it admits this certificate as evidence in refutation of the fact related by the witness that there was no sale of adjacent lands recently." After further discussion, the court said: "But you are thinking that the Court is going to take that evidence into consideration for the purposes of the value of the farm, and it is solely as a refutation of a statement of this witness." To which counsel for the government replied: "Then, in my opinion that certificate ought not to be admitted, Your Honor, because it does not contradict the witness."

We think it is clear that the district court did not admit the certificate for the purpose of showing the prices paid in recent, voluntary sales of similar properties. On the contrary, after the expert for the government testified that he

had taken no such recent sales into consideration because he had been informed the Registry disclosed none, the lower court admitted the certificate of the Registrar solely to impeach the credibility of the witness and solely to show that, according to the Registry, sales of adjacent lands had taken place in 1941. The certificate was therefore not admitted to show the sales prices of the adjacent land and could not—and presumably was not—considered on the substantive question of the market value of the land condemned. It might be dangerous to submit such a certificate to a jury, which might find it difficult to understand and to comply with this subtle distinction in the law of evidence. But in a case tried without a jury we believe the certificate of the Registrar, offered as impeaching testimony to show only that sales of adjacent lands took place in 1941, was admissible for this limited purpose.

■ The People might conceivably argue that even to impeach the testimony of their expert that the Registry disclosed no recent sales, the certificate was inadmissible on the ground that a sale in 1941 was not recent as related to a 1946 condemnation suit. But we think that under the circumstances this argument should be addressed to the weight to be given to the impeaching testimony rather than to its admissibility. That is to say, even after admission of the certificate, the government might argue, and the lower court might conclude, that it did not really impeach the testimony at which it was aimed as a 1941 sale was not sufficiently recent to justify a conclusion that the government expert had testified incorrectly that the Registry disclosed no recent sale of property in that location.[2]

■ Finally, even if the lower court erred in admitting the certificate, we do not deem it prejudicial because, as we

---

[2] The Chief Justice is of the view that the certificate was not admissible because it did not impeach the statement of the witness that he had been informed there had been no recent sales. However, he believes the error in admitting the certificate was not prejudicial.

hereinafter point out, the lower court in its findings of fact relied wholly on the testimony of the defendants' expert and accepted his figures as to market value verbatim without reference to the foregoing certificate of the Registrar or to any other testimony. See *People v. Carmona, ante*, p. 292. The record as a whole, this episode as it appears in the record and the findings of fact satisfy us that the district court gave no weight to this certificate.

■ The second error likewise concerns a question of admissibility of testimony. Pedro Nido testified as an expert witness for the defendants, giving in detail his opinion as to the market value of the condemned land. He was cross-examined on this testimony and left the stand. Thereafter, he was recalled by the defendants and was asked what the appraisal of the condemned land must have been by the Federal Land Bank in 1926 if it had granted a $13,000 loan secured by a first mortgage thereon at that time. His reply, over the objection of the government, was that he was familiar with Land Bank policy on this question; that the Bank must have appraised this land in 1926 at $26,000 as it made loans on first mortgages at that time only on 50 per cent of the value of the land; that the appraisals of the Bank did not reflect market value, which might fluctuate from year to year, but a "normal" value irrespective of value in the market at the time of the appraisal; that even under the Bank's formula he thinks a 1926 appraisal of $26,000 was too high and that it should have been $20,000; that land in this area has increased 25 per cent in value since 1926; and that at the time of the trial in 1947 the land had a market value of $25,000 to $28,000.

This testimony was inadmissible. Apart from the fact that the record, so far as we are aware, contains no evidence of the hypothetical 1926 Land Bank appraisal, it was not a *sale* at the market price but an *appraisal* for loan purposes which the witness specifically stated was not related to market

price. *Nogueras* v. *Muñoz*, 67 P.R.R. 413, 418. In addition, even if it were a sale at the market price, it was too remote. *People* v. *Carmona, supra;* cases cited in footnote 1. Nor can it be argued that a remote sale is made admissible by simply stating in general terms that values in the area have risen 25 per cent since the date of the sale. This simple device would permit introduction of all sales, however remote.

■ However, we are unable to conclude that admission of this testimony constituted prejudicial error. Nido had already testified as an expert that, based on his personal knowledge and familiarity with this land and other land similarly situated and with local conditions, he was of the opinion that the land was worth on the day he was testifying,[3] certain detailed amounts for various portions thereof. And the district court, apparently discarding all the other testimony, in its findings of fact stated that it "gives entire credit" to the testimony of Nido and awarded exactly these amounts to the defendants. In view of these circumstances, we think the rule laid down in the *Carmona* case applies here; namely, if we are convinced that the lower court relied wholly on relevant and competent evidence of a substantial nature which sustains the award, we will not reverse a judgment in a condemnation case even if other evidence which clearly did not affect the result was erroneously admitted.

■ The third error assigned is that the lower court erred in weighing the evidence. What we have already said indicates that the record contains substantial evidence sufficient to support the judgment. Based on a cold record, conceivably we might be of the view that the award was too high. But the district court heard the witnesses. It was its function, not ours, to determine which of them was worthy

---

[3] The true test, of course, was market value at the date of condemnation (1946) and not at the date of trial (1947). *United States* v. *Miller*, 317 U. S. 369, 374; but that question is not now before us.

of credence, in whole or in part. See *People* v. *Saldaña*, 69 P.R.R. 663, 674, and cases cited; *People* v. *Anadón*, 69 P.R.R. 766, 771.

The judgment of the district court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.