**UNITED STATES of America,**
**Plaintiff-Appellant,**

**v.**

**CERTAIN LAND IN the CITY OF FORT WORTH, COUNTY OF TARRANT, STATE OF TEXAS, and Mary C. Cooper et al., Defendants-Appellees.**

**No. 26698.**

United States Court of Appeals
Fifth Circuit.

Aug. 21, 1969.

Eldon B. Mahon, U. S. Atty., Claude D. Brown, Asst. U. S. Atty., Fort Worth, Tex., Clyde O. Martz, Asst. Atty. Gen., Raymond N. Zagone, S. Billingsley Hill, Attys., Dept. of Justice, Washington, D. C., for appellant.

Jack C. Wessler, Cantey, Hanger, Gooch, Cravens & Scarborough, Fort Worth, Tex., for appellees.

Before AINSWORTH and SIMPSON, Circuit Judges, and MITCHELL, District Judge.

SIMPSON, Circuit Judge:

In June, 1966, the United States condemned seven parcels of land,[1] constituting an entire city block, in Fort Worth, Texas, for use as a parking lot for a federal building recently constructed there. Parcel 2, owned by Ben H. Wilson, was unimproved and was being used as a parking lot at the date of taking. The landowner's two experts gave testimony as to value, $10.00 and $10.42 per square foot respectively. The government's experts testified that the property was worth only $8.00 a square foot. The district court sitting without a jury awarded compensation totaling $122,700, or $10.00 per square foot, the lower figure submitted by the landowner's witnesses.

The expert witnesses based their opinions as to value upon the comparable sales method. Under this method, the appraiser examines a number of recent sales in the market area. In correlating the significance of such sales to the subject property, the appraiser considers the size of the parcel, the nature of improvements, if any, the time of sale, the location, and other variables. While the government raised no issue as to the use of the comparable sales technique, it did object at trial to the admission into evidence of two sales considered by the landowner's experts. We will refer to these sales, as do the parties, as the "Salvation Army" sale and the "Church" sale. The government also objected at trial to the introduction of testimony relating to an unexercised option to purchase Parcel 2. These objections form the basis of the government's appeal. We conclude that they are each lacking in substance and affirm the judgment of the lower court.

I.

*The Salvation Army Sale*

This sale involved three parties, the Lone Star Gas Company, the Texas Drug Company, and the Salvation Army. Lone Star was interested in acquiring property owned by the Salvation Army which was located in the same block as Lone Star's office building. Lone Star also owned property adjacent to Texas Drug which Texas Drug was interested in purchasing. To accomplish these objectives, the two companies entered into the following transaction: The vendee, Texas Drug, paid Salvation Army $64,000 and Lone Star made an $11,000 charitable contribution to the Salvation Army for the Army's property located next to Lone Star. Texas Drug then deeded the Salvation Army property to Lone Star in exchange for the property owned by Lone Star which was adjacent to Texas Drug.

The unusual nature of this transaction provides the basis for the government's objection. The government contends that evidence of this sale should not have been admitted because it involved a swap of land and a charitable contribution. Consequently, the government asserts that the Salvation Army transaction was not for cash or anything shown to be its equivalent. To support its inadmissibility claim, the government relies upon United States v. Leavell & Ponder Inc., 5 Cir. 1961, 286 F.2d 398, cert. denied 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855 (1961). We held there that if evidence of a prior sale involving an exchange of land is to be admissible as proof of present value, the values of such exchanged lands must be proved by the same standards as attends the proof of value of the property being condemned.

---

1. See United States v. Certain Land, etc., 5 Cir. 1969, 414 F.2d 1026.

Thus the government concludes that the Salvation Army sale was inadmissible under the *Leavell & Ponder* rationale because there was no proof as to the value of the land exchanged by Lone Star to Texas Drug and no investigation as to the purposes of the charitable contribution.

■■ The *Leavell and Ponder* case is clearly inapposite because of the factual differences present. There, the vendor received as payment, *both* money and land. In the present case, the vendor, the Salvation Army, received only money. From the standpoint of the Salvation Army the sale was for cash and nothing more. It makes little difference how many buyers were involved, or how the buyers classified the money they paid, or what the buyers did with the property after the purchase. What is important is that the Salvation Army's asking price was $75,000 and that was exactly the amount it received. It is well settled that the admissibility of comparable sales in the trial of condemnation suits is a matter within the peculiar discretion of the trial judge. Jones v. United States, 258 U.S. 40, 42 S.Ct. 218, 66 L.Ed. 453 (1922); Jayson v. United States, 5 Cir. 1961, 294 F.2d 808; International Paper Company v. United States, 5 Cir. 1955, 227 F.2d 201. We find no abuse of discretion on the part of the trial judge in permitting testimony as to the Salvation Army sale to be introduced into evidence. The government's objections to this sale clearly went to the weight rather than to the admissibility of the evidence.

## II.

### *The Saint Andrews Episcopal Church Sale*

The Church purchased a lot consisting of 6,625 square feet located one-half block from the subject property for $55,000 or $8.30 a square foot in July 1966, one month after the date of taking. The Church had purchased this property to replace property previously condemned by the federal government (the Church owned property in the condemned block that the court is now considering). Later the Church sold the lot to the Texas Electric Service Company after purchasing two additional lots closer to the Church. The Electric Company paid $55,000 plus six per cent interest for the period between sales for the property.

The government contends that the Church's purchase was not a free and open market transaction because it was compelled by the government's condemnation and reflected the unique and special needs of the purchaser and was not a proper basis for the determination of fair market value and that consequently the sale was made under pressure. The basis for the government's argument that the Church sale did not reflect the true market price is the claim that the Church was desperate for parking space because of the condemnation and would have paid any price to meet its special needs. Likewise, the government asserts that the Texas Electric Service Company, which subsequently purchased the property from the Church, was also willing to pay higher than true market value to acquire the land in order to square up its holdings on the block. Thus the government concludes that the Church's purchase was involuntarily made because it was forced to replace property previously condemned and was not therefore a true reflection of the market.

■ Assuming that pressure did exist, it was clearly of an economic nature. Economic causes are not enough to render a transaction involuntary and inadmissible. We think the rationale expressed in District of Columbia Redevelopment Land Agency v. 61 Parcels of Land, etc., 1956, 98 U.S.App.D.C. 367, 235 F.2d 864, 865–866, is dispositive of the government's position:

> "In view of the importance of the main contention in the present cases we now determine more specifically the type of compulsion, coercion, or compromise which must be rebutted by the one offering evidence of previous sales preliminarily to reception by the court of such evidence. A comparable sale was not under compulsion,

coercion, or compromise in this sense if the witness testifies, or if it is otherwise shown, that the public records do not disclose that the sale was at foreclosure, under deed of trust securing an indebtedness, at execution or attachment, at auction, under pressure of the exercise of the power of eminent domain, or other coercion sui generis —types of legal compulsion generally disclosed by public records. There need be no showing of the non-existence of, or the nature of, the varied and variable economic reasons or motivations which might have moved the parties concerned to resort to the open market to dispose of property or to sell by private negotiation. *Such considerations or pressures go to weight and not to admissibility,* and may be developed, if desired, on cross examination or by independent evidence. * * * " (Emphasis ours)

We find that no legal compulsion to purchase or sell the property was present, and hence hold that the trial judge did not abuse his discretion in admitting and considering the evidence relating to the Church sale.

### III.

#### *The Option*

The owner of Parcel 2, Mr. Wilson, and one of the landowner's experts, Mr. Carb, were permitted to testify as to a 1965 option to purchase Parcel 2 for $13.00 per square foot. Wilson received $1,000 for the option which was never exercised.

The government asserts that United States v. Smith, 5 Cir. 1966, 355 F.2d 807, holds that an unexercised option cannot be admitted as evidence of market value. Thus it argues that error was committed when the landowner and expert Carb were permitted to testify about the option.

Reliance upon *Smith* is misplaced. In that case the experts' appraisal was based solely on unexercised options while in the present case the experts' appraisals were based on ten or more comparable sales. Further even if

it was error to admit the option testimony, such evidence was certainly not prejudicial in view of Carb's testimony that he gave no weight to the option other than setting a possible upper limit.

We find no abuse of discretion by the trial court in admitting any of the evidence objected to by the government. The judgment of the trial court is

Affirmed.