Earl E. THOMPSON, Sr.,
Plaintiff–Appellant,

v.

Henry T. HAYNES, Fluid Controls,
Inc., and Mighty Clean Corpora-
tion, Defendants–Appellees.

No. 01–1392.

United States Court of Appeals,
Federal Circuit.

Sept. 30, 2002.

Frank J. Catalano, Frank J. Catalano, P.C., of Tulsa, OK, argued for plaintiff-appellant.

Stephen R. Ward, Gardere Wynne Sewell LLP, of Tulsa, OK, argued for defendants-appellees.

Before GAJARSA, LINN, and DYK, Circuit Judges.

LINN, Circuit Judge.

Earl E. Thompson, Sr. ("Thompson") appeals the judgment, pursuant to Fed. R.Civ.P. 54(b), of the United States District Court for the Northern District of Oklahoma (1) holding, on the counterclaims of defendants Henry T. Haynes, Fluid Controls, Inc., and Mighty Clean Corporation (collectively "Fluid Controls"), that Thompson's sale of his swivel devices constituted a willful violation of the Lanham Act, the Oklahoma Deceptive Trade Practices Act, and the common law pertaining to unfair competition; (2) awarding defendants a total of $2,239,141.52, representing Fluid Controls' lost profits on swivel sales, Thompson's profits on allegedly counterfeit swivels, and damages for an advertising campaign, all trebled and set off against unpaid royalties owed to Thompson by Fluid Controls; and (3) enjoining further unfair competition by Thompson. *Thompson v. Haynes*, No. 95–CV–1139–H(M) (N.D.Okla. Apr. 18, 2001) (*"Judgment"*). Because the district court did not err in awarding Thompson's profits to Fluid Controls or in holding that no correction of the inventorship of the United States Patent No. 5,284, 298("'298 patent") was merited, and because the district court did not abuse its discretion in issuing an injunction or clearly err in finding Thompson's actions to be willful, we affirm in part. However, because the district court's award of damages based on lost sales was based on speculation, because an award of advertising damages was not merited, and because the district court improperly trebled the award of Thompson's profits, we vacate those portions of the award of damages and remand for further proceedings consistent with this opinion.

## BACKGROUND

In November of 1992, Thompson approached Fluid Controls with a fluid conducting swivel concept. In January of 1993, Thompson and Fluid Controls entered into an agreement to develop the concept and file a patent application. In the agreement, Fluid Controls' president, Henry T. Haynes ("Haynes"), and Thompson were described as the "joint patent applicants." The agreement provided that the patent, if issued, would be assigned to Fluid Controls. The agreement also provided for a royalty to be paid to each of the "patent owners," a phrase that apparently refers to Thompson and Haynes. The '298 patent, which listed Thompson and Haynes as co-inventors, issued on February 8, 1994 and was assigned to Fluid Controls.

For a time, Thompson served as a distributor of the patented swivels, which were manufactured by Fluid Controls. These swivels were sold under the designation "Whirl Jet." After disputes as to the discount at which Thompson was entitled to purchase the Fluid Controls swivels and as to attorney fees, Fluid Controls ceased making royalty payments to Thompson. Thompson then began to produce his own swivels, at least some of which he began to sell in May of 1994 to customers to which he had previously sold Fluid Controls swivels. Thompson filed a separate patent application on an allegedly different swivel device; this application matured to U.S. Patent No. 5,531,308, issued on July 2, 1996.

In June 1994, one of Thompson's customers, Simpson Cleaning Systems, Inc. ("Simpson"), experienced installation problems with swivels manufactured by Thompson. Steve Pauley, the Simpson engineer overseeing the installation process, contacted Fluid Controls for assistance in solving the problem. When Fluid Controls' officials inspected the swivels, they discovered that the swivels were manufactured by Thompson. Fluid Controls sent a letter to Pauley informing him that the swivels infringed the '298 patent and suggesting that Simpson cancel any orders with Thompson and resubmit them directly to Fluid Controls. Thereafter, Simpson ceased doing business with Thompson and began purchasing directly from Fluid Controls.

Fluid Controls then warned its other customers about what it believed to be the unlicensed manufacture and sale of swivels that infringed the '298 patent. One such customer was Steel Eagle. Fluid Controls alleges that Thompson sold substitute swivels to Steel Eagle, although Thompson disputes this. Fluid Controls' officials believed that Steel Eagle's unsatisfactory experiences with the Thompson swivels caused Steel Eagle to rule out the use of Fluid Controls swivels in high-end cleaning devices.

Thompson sued Fluid Controls in the Northern District for Oklahoma for: (1) declaratory judgment of non-infringement of the '298 patent; (2) recovery of unpaid royalties under the agreement with Fluid Controls; (3) an injunction against interference with business relations; (4) damages for unfair business practices; (5) correction of inventorship of the '298 patent to remove Haynes as a co-inventor; (6) rescission of the agreement to assign the '298 patent to Fluid Controls; and (7) infringement of the '298 patent, on the theory that Thompson was the sole owner of all rights in the '298 patent. Fluid Controls counterclaimed for: (1) infringement of the '298 patent; (2) correction of inventorship of the '298 patent to remove Thompson as a co-inventor; (3) unjust enrichment; (4) violations of the Lanham Act and Oklahoma unfair competition law; and (5) declaratory judgment of invalidity of Thompson's '380 patent.

A bench trial was held in January of 1999. On May 25, 1999, the court issued partial findings of fact and conclusions of law. The court, on Thompson's claims, held as a matter of law that no correction of inventorship of the '298 patent was required and found that Thompson was entitled to an accounting for certain unpaid royalties. On Fluid Controls' counterclaims, the court found that Thompson had supplied his swivels to Simpson instead of the Fluid Controls swivels without informing Simpson of the substitution and concluded that Thompson had willfully violated the Lanham Act, the Oklahoma Deceptive Trade Practices Act, Okla. Stat. tit. 78, §§ 51–55 ("DTPA"), and the common law relating to unfair competition. The court also found that Thompson's actions resulted in lost sales of at least 100

Fluid Controls swivels per month to Steel Eagle. *Thompson v. Haynes,* No. 95–CV–1139–H (N.D.Okla. May 25, 1999) (*"Thompson"*). The court did not address the remaining claims and counterclaims. The court concluded that Fluid Controls was entitled to injunctive relief, as well as damages, costs, and attorney fees. The court then referred the matter to a magistrate judge, acting as a special master, to complete the accounting.

Based on facts obtained after the trial that Thompson had not disclosed sales of his swivels to two customers, Hydro Tek and Elite Manufacturing, Fluid Controls moved for discovery sanctions against Thompson. The court referred Fluid Controls' motion for discovery sanctions to the same magistrate judge.

The special master issued a report on the accounting ten months later. *Thompson v. Haynes,* No. 95–CV–1139–H (M) (N.D.Okla. Mar. 28, 2000) (*"Special Master's Report"*). The special master found that Thompson should be awarded $76,673.98 for unpaid royalties, and that Fluid Controls should be awarded $605,526 in lost sales damages, $133,412.50 for Thompson's profits on swivel sales, and $33,000 in damages for an advertising campaign. Based on the district court's finding of willfulness, the special master recommended that the damages owing to Fluid Controls be trebled and that Fluid Controls be awarded attorney fees, limited to the fees incurred for the Lanham Act and DTPA claims on which it prevailed at trial. The master deferred making a recommendation on attorney fees pending segregation of the fees by claim.

On the sanctions motion, the magistrate judge found that Thompson had failed to meet his discovery obligations and recommended that Thompson be precluded from contesting in any way that his sales of swivels to Hydro Tek and Elite Manufacturing violated the Lanham Act and the DTPA. *Thompson v. Haynes,* No. 95–CV–1139–H (M) (N.D.Okla. Mar. 28, 2000) (*"Sanctions Report"*).

The district court adopted both reports. *Thompson v. Haynes,* 95–CV–1139–H (N.D.Okla. Sept. 5, 2000) (*"Adopting Order"*). In April of 2001, the court issued judgment pursuant to Rule 54(b). As recommended by the special master, the court awarded Fluid Controls damages for lost sales and for conducting an advertising campaign, as well as Thompson's profits, all of which were trebled and offset against the unpaid royalties for a final award to Fluid Controls of $2,239,141.52. *Judgment* at 2. The court did not award attorney fees. In addition, the court entered a permanent injunction against further unfair competition by Thompson. *Id.* at 3.

Thompson challenges the district court's determination that his conduct constituted willful unfair competition. He further challenges the award of damages, the entry of a permanent injunction, and the district court's determination on inventorship. We have jurisdiction under 28 U.S.C. § 1295(a).

## DISCUSSION

### I

In deciding non-patent issues, such as trademark, trade dress and other unfair competition issues under § 43(a) of the Lanham Act, this Court applies regional circuit law. *Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1359, 50 USPQ2d 1672, 1675 (Fed.Cir.1999) (*en banc in relevant part*); *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1447, 27 USPQ2d 1297, 1300 (Fed.Cir.1993) (applying regional circuit law to a trade dress issue); *Atari, Inc. v. JS & A Group, Inc.,* 747 F.2d 1422, 1439, 223 USPQ 1074, 1087 (Fed.Cir.1984) (*en banc*) (recognizing the "freedom of the

district courts to follow the guidance of their particular circuits in all but the substantive law fields assigned exclusively to this court"). The Tenth Circuit accepts the district court's factual findings unless they are clearly erroneous and reviews the application of legal principles de novo. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555, 38 USPQ2d 1609, 1625 (10th Cir.1996). In a suit under the Lanham Act, likelihood of confusion is a factual question reviewed for clear error. *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 553, 46 USPQ2d 1481, 1483 (10th Cir.1998); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 967, 39 USPQ2d 1865, 1870 (10th Cir.1996).

■ The issuance or denial of a permanent injunction is reviewed for an abuse of discretion. *Harolds Stores*, 82 F.3d at 1555, 38 USPQ2d at 1625.

■ Review of a decision to enhance damages is for an abuse of discretion. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236, 53 USPQ2d 1929, 1940 (10th Cir.2000); 15 U.S.C. § 1117(a) (2000).

■ The imposition of sanctions for a discovery violation is reviewed under an abuse of discretion standard. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

■ The legal question of inventorship is reviewed without deference. *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1370, 60 USPQ2d 1029, 1033 (Fed.Cir.2001).

## II

### A

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (2000), creates a federal remedy for false representations or false designations of origin used in connection with the sale of a product. The statute provides civil liability for:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . .

■ The district court found that Thompson "substituted a device he named the 'SW–343' swivel as product in response to orders he received from customers for the '298 patented swivel," and that the customer that bought Thompson's substituted swivels "testified that he had no knowledge of the substitution and thought the substitute swivels were Defendants' swivels." *Thompson* at 12. The district court determined that this evidence of actual confusion established a likelihood of confusion, which provided the basis for the district court's holding that "Thompson's sales of substitute swivels constituted a false designation of origin, a false or misleading description of fact, and a false or misleading misrepresentation of fact in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)." *Id.*

Thompson argues that the district court's determination was based on clearly erroneous fact-finding. Specifically, Thompson asserts that he informed Jim Schiavi, Simpson's purchasing agent, that he was substituting his own swivels for the Fluid Controls swivels he had been supply-

ing. Thompson directs our attention to records establishing that Schiavi cancelled one order, which was allegedly for Fluid Controls swivels, and substituted another order that Thompson asserts was for swivels of his own manufacture. Thompson asserts that Schiavi did this after Thompson informed him that he wished to switch the swivels supplied. Thompson further relies on his own testimony that he made no misrepresentations to Simpson regarding the source of the swivels and the testimony of Pauley, Simpson's research engineer, that Thompson had made no such misrepresentations to him. Thompson argues that he never employed the term "whirl jet," which Schiavi used in his purchase order, for any of his own swivels. Thompson also asserts that any evidence of confusion arising from the Simpson transaction should not be used to infer confusion in other sales of Thompson's swivels, because the Simpson transaction was "unique."

Fluid Controls responds that none of the underlying factual findings were clearly erroneous and asserts that the evidence of actual confusion in the Simpson transaction is the "best evidence" of confusion in the marketplace, citing *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1484, 4 USPQ2d 1216, 1220–21 (10th Cir.1987). Fluid Controls asserts that the similar "SW 343 D" designation Thompson used, Schiavi's note on the substituted purchase order specifying "whirl jet" swivels, and Pauley's contact with Fluid Controls after experiencing installation problems with Thompson's swivels, show that the district court did not clearly err in finding actual confusion.

The factual findings of the district court underlying its finding of likelihood of confusion are not clearly erroneous. The evidence of record establishes that in April of 1994, more than one month before Thompson asserts that he first began supplying his "SW–343–D" swivels to Simpson, Thompson sold Fluid Controls-manufactured swivels to Simpson under the designation "SW–343." Furthermore, Pauley testified that after experiencing problems with the Thompson swivels, he contacted not Thompson but Fluid Controls for help, asking "why [Fluid Controls] had changed the design of the swivel without notifying me." Trial Tr. at 710. Pauley also stated that he was not aware, prior to discovering the problems, that the swivels were manufactured by Thompson. Thompson argues that his testimony establishes that Schiavi was informed of the substitution. However, there is no testimony from Schiavi in the record, and the district court explicitly rejected Thompson's testimony. *Thompson* at 4. We see no reason to disturb this credibility determination.

■ Thompson argues that it was Fluid Controls' burden to have Schiavi, Simpson's purchasing agent, testify that he was confused as to the source of the swivels. Thompson confuses the burden of persuasion in the unfair competition counterclaim, which remains with Fluid Controls throughout, *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1530, 30 USPQ2d 1930, 1932 (10th Cir. 1994), with the burden of going forward with the evidence—the burden of production—that can shift back and forth. *See Dir., Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 272–74, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). Fluid Controls met its burden of production on the issue of confusion by establishing that Pauley, a representative of the consumer of the swivels, made an "incorrect mental association between the involved ... producers," *Jordache Enters.*, 828 F.2d at 1484, 4 USPQ2d at 1218 (quoting *S.F. Arts & Athletics, Inc., v. United States Olympic Comm.*, 483 U.S. 522, 564, 107 S.Ct. 2971, 97 L.Ed.2d 427, 3 USPQ2d

1145, 1163 (1987) (Brennan, J., dissenting)). Once Fluid Controls had established this, the burden of going forward with the evidence shifted to Thompson to rebut Fluid Controls' showing of actual confusion. Thompson cannot maintain that Fluid Controls' ultimate burden of persuasion made it unnecessary for him to rebut Fluid Controls' evidence. Fluid Controls showed that a representative of the customer was confused as to the source of the swivels. No more was required for a showing of actual confusion.

The district court's finding that "Thompson's substitution of his SW–343 swivels in place of the Defendants' patented '298 swivels was part of an intentional plan to deceive consumers about the source of SW–343 swivels," *Thompson* at 5, was supported by the similarity in the designations used, as well as the course of dealing between Simpson and Thompson. Thus, the district court's findings that Thompson's use of the "SW 343" designation was intentionally misleading and willful, and that the Simpson transaction represented an instance of actual confusion, were not clearly erroneous.

■■■■ Neither was the finding of likelihood of confusion clearly erroneous. A likelihood of confusion exists "when consumers make an incorrect mental association between the involved commercial products or their producers." *Jordache Enters.*, 828 F.2d at 1484, 4 USPQ2d at 1218 (quoting *S.F. Arts*, 483 U.S. at 564, 107 S.Ct. 2971, 97 L.Ed.2d 427, 3 USPQ2d at 1163 (Brennan, J., dissenting)). The Tenth Circuit considers the following factors relevant to a determination of whether a likelihood of confusion exists:

(a) the degree of similarity between the marks, including the marks' appearance, pronunciation, suggestion, and manner of display;

(b) strength or weakness of the plaintiff's mark;

(c) the intent of the alleged infringer in adopting its mark;

(d) similarities and differences of the parties' goods, services and marketing strategies;

(e) the degree of care likely to be exercised by purchasers of the goods or services involved; and

(f) evidence of actual confusion, if any.

*Heartsprings*, 143 F.3d at 554, 46 USPQ2d at 1483. "No one factor is dispositive, and the final determination of likelihood of confusion must be based on consideration of *all* relevant factors." *Id.* "[T]he best evidence of a likelihood of confusion in the marketplace is actual confusion." *Jordache Enters.*, 828 F.2d at 1487, 4 USPQ2d at 1220–21.

In this case, the final factor, evidence of actual confusion, is strongly indicative of a likelihood of confusion. It is undisputed that Pauley, the engineer at Simpson who actually used both swivels, was not aware that the substituted swivels were produced by Thompson and contacted Fluid Controls for assistance with the Thompson swivels. With the exception of the degree of care exercised by consumers, regarding which we find no evidence in the record, the remaining factors all support a finding of likelihood of confusion. The designation Thompson applied to his swivels, SW–343–D, was very similar to the arbitrary SW–343 designation under which Thompson had previously sold the swivels manufactured by Fluid Controls. Furthermore, although Thompson characterized the SW 343 designation as a "generic term," Trial Tr. at 933, he has provided no evidence that the designation is "used to describe the relevant type or class of goods." *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 654, 40 USPQ2d 1865, 1872 (10th Cir.1996). With respect to intent, the district court found that Thompson's conduct was part of "an intentional plan to

deceive consumers." Thompson at 5. This is supported by the record, which reflects that the Fluid Controls and Thompson swivels were so similar that the engineer who was responsible for installing them did not recognize that they were different until he experienced problems adjusting them, and that Thompson sold both swivels in the same manner to the same customer. In sum, the district court weighed all the relevant factors as required, Heartsprings, 143 F.3d at 554, 46 USPQ2d at 1483, and its finding of a likelihood of confusion is not clearly erroneous.

Here, in order to establish unfair competition under § 43(a) of the Lanham Act, it must be shown "(1) that defendant made material false or misleading representations of fact [concerning the origin] of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff." Cottrell, Ltd. v. Biotrol Int'l, Inc., 191 F.3d 1248, 1252, 52 USPQ2d 1194, 1196–97 (10th Cir.1999) (citations omitted). Likelihood of confusion "forms the gravamen" for an action under § 43(a) of the Lanham Act. King of the Mountain Sports, Inc. v. Chrysler Corp., 185 F.3d 1084, 1089, 51 USPQ2d 1349, 1352 (10th Cir.1999). Since Fluid Controls has established that it was injured by Thompson's misleading representations in connection with the sale of his swivels and that Thompson's conduct caused a likelihood of confusion as to the source of those swivels, the district court's conclusion of law that "Thompson's sales of substitute swivels constituted a false designation of origin, a false or misleading description of fact, and a false or misleading misrepresentation of fact in violation of Section 43 of the Lanham Act," Thompson at 12, was not erroneous.

The district court also committed no error in holding that Thompson's acts constituted a violation of the DTPA. The DTPA makes actionable deceptive trade practices, defined inter alia as "pass[ing] off goods ... as those of another," or "knowingly mak[ing] a false representation as to the source ... of goods." DTPA § 53(A). An intent to deceive need not be shown to make out a claim under the DTPA. Id. § 53(B) (making evidence of a deceptive trade practice "prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition"); Id. § 54(A) (stating that "[p]roof of intent ... shall not be required"); Brunswick Corp. v. Spinit Reel Co., 832 F.2d 513, 527 n. 8, 4 USPQ2d 1497, 1508 n. 8 (10th Cir.1987) (holding that the Oklahoma legislature "did not make intent to deceive an element of proof of passing off"). The district court found that "Thompson passed off his products as those of Defendants and thus caused confusion in the marketplace, to Defendants' detriment." Thompson at 14. This finding is not clearly erroneous, and the district court did not err in concluding as a matter of law that Thompson had violated the DTPA.

Lastly, the district court held that Thompson had violated the common law of unfair competition. The Oklahoma courts have found unfair competition where "the acts of defendant are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates." Coalgate Abstract Co. v. Coal County Abstract Co., 180 Okla. 8, 67 P.2d 37, 40, 33 USPQ 285, 287 (1937) (quoting 63 C.J. at 399). Misuse of a distinctive term or symbol is not required. Bell v. Davidson, 597 P.2d 753, 755, 205 USPQ 663, 665 (Okla.1979) ("[I]f ordinary words are used to palm off goods of one manu-

facturer, dealer or vendor as those of another and to carry on unfair competition, their use may be enjoined by a court of equity to the same extent as a fully protected distinctive term or symbol."). The test is whether "the ordinary buyer, exercising ordinary intelligence and observation in business matters, will certainly or probably be deceived[;] a mere possibility of deception and confusion [is] insufficient." *Carpet City, Inc. v. Carpet Land, Inc.*, 335 P.2d 355, 358, 119 USPQ 185, 186 (Okla.1958). Applying these standards, we conclude that the district court did not err in holding that Thompson's actions amounted to unfair competition.

### B

The district court found that Fluid Controls was entitled to "an accounting of all gains, profits, and advantages derived from [Thompson's] unfair competition, as well as compensatory damages, interest and the costs of [the] suit." *Thompson* at 15. The court addressed four categories of damages: Thompson's profits on sales of his swivels; Fluid Controls' lost profits attributable to Thompson's acts of unfair competition; Fluid Controls' damages for conducting an advertising campaign to counteract the unfair competition; and Fluid Controls' attorneys' fees. We shall consider each category of damages in turn.

### 1

██ The court found that Thompson "caused 1472 swivels to be manufactured, of those 1250 were sold, leaving 222 remaining in inventory." *Special Master's Report* at 8. The court calculated the profit margin on the 1250 swivels actually sold using Fluid Controls' sale price, because Thompson's sale price was not apparent from the evidence submitted. *Id.* at 8–9. Using these figures, the court arrived at a damages figure of $133,412.50. *Id.* at 9. Based on its finding that Thompson's willful violations of federal and state law made

the case exceptional, *Thompson* at 6, the court then trebled this figure. *Judgment* at 2.

Thompson argues that the Simpson transaction that led to the finding of likelihood of confusion was unique and that the district court erred in assuming that the remaining sales were made under similar conditions. Thompson states that the record evidence shows that Hydro Tek was aware that there was no relationship between Thompson and Fluid Controls. Thompson also argues that there is no evidence that Elite was deceived by Thompson.

Fluid Controls responds that the district court did not err in assessing damages based on all of Thompson's sales. Fluid Controls argues that the district court order granting Fluid Controls' motion for sanctions precluded Thompson from "contesting in any way that his sales of swivels to Hydro Tek and Elite Mfg. violated the Lanham Act and the Oklahoma Deceptive Trade Practices Act." *Sanctions Order* at 5.

We agree with Fluid Controls. We review the district court's grant of sanctions for a discovery violation for an abuse of discretion. *Ehrenhaus*, 965 F.2d at 920. Thompson essentially reargues the facts relating to the Hydro Tek and Elite sales and explains his skepticism regarding Fluid Controls' motivation in requesting Thompson's customer list. However, this does not amount to a showing that the district court abused its discretion in precluding Thompson from challenging that the sales were Lanham Act and DTPA violations. The district court is "best qualified" to determine the appropriate sanction for a discovery violation, *id.*, and in a case such as this, in which Thompson exhibited a "complete lack of attention to his obligation to provide complete and accurate information," *Sanctions Order* at 4,

we are unwilling to substitute our judgment for that of the district court without a clear showing that the court abused its discretion.

■ Nor do we discern any legal error or clearly erroneous fact finding in the court's calculation of Thompson's profits. It is evident that there was some confusion as to the number of swivels sold to various customers, but this confusion was engendered by Thompson's dilatory conduct in discovery. "A defendant whose wrongful conduct has caused the difficulty in assessing damages cannot complain that the damages are somewhat speculative." *Brunswick*, 832 F.2d at 526, 4 USPQ2d at 1506.

However, we find that the district court erred in its assessment of exemplary damages. In its final judgment, the court added Thompson's profits to Fluid Controls' lost sales and corrective advertising costs, and trebled the resulting total. While 15 U.S.C. § 1117(a), which governs damages for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), authorizes the trebling of Fluid Controls' damages, the court's identical treatment of Thompson's profits does not comport with the language of the statute. That provision recites:

> (a) When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a), (c), or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its

direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a) (2000). By the terms of the statute, "damages" are to be treated separately from "profits." As for damages, the court may award up to three times actual damages, depending on the circumstances of the case. As for profits, however, the court is not authorized to award up to three times the amount proved. For profits, the court is constrained to award the amount proved, subject only to an adjustment, up or down, where the recovery would be otherwise unjust. The court may not, as it did here, simply lump profits together with damages and apply the same measure of enhancement to both. In its consideration of an award of profits on remand, the court must treat the enhancement of damages and profits separately, as specified by the statute, keeping in mind the further statutory instruction that the sum awarded "constitute compensation and not a penalty." *Id.*

**2**

■ The district court's award to Fluid Controls of $605,526 in lost sales, which it trebled along with the other amounts awarded, was based on a finding that "[Fluid Controls] lost sales of at least 100

swivels per month from June 1994 to present because of Mr. Thompson's sales of inferior quality swivels to Stell [sic] Eagle." *Thompson* at 6.

Thompson attacks this award as speculative. Thompson asserts that he never sold any of his own swivels to Steel Eagle, only those manufactured by Fluid Controls. Moreover, Thompson directs our attention to record evidence showing that Steel Eagle estimated its need at 150 swivels per year in June of 1994, and that Fluid Controls has sold its own swivels at approximately twice that rate to Steel Eagle since that time.

Fluid Controls responds that the court's determination was based on sufficient evidence and notes that in the Tenth Circuit, "[e]vidence of the amount of damages may be circumstantial and inexact." *Brunswick,* 832 F.2d at 526, 4 USPQ2d at 1506–07. The evidence Fluid Controls relies on is principally Haynes' testimony at trial, the relevant portion of which is reproduced below:

Q. Now, would you also tell the Court with regard to with regard to Mr. Thompson's selling of his devices and attempts to sell his devices, has that caused your company any loss of sales?
A. Well, the only known potential loss that I can think of would be the company of Steel Eagle, whereby they had had a problem with one of Mr. Thompson's devices and they were very reticent about using our device, either, on their more prestigious machines, And I don't know, they probably produce a hundred a month of those machines and so forth. That's the only thing I can relate to.
Q. Do you believe you have lost sales in that amount?
A. I'm relatively sure I'm relatively sure of that. To what extent, I don't know.

Trial Tr. at 964–65. In addition, Fluid Controls directs our attention to testimony from Gary Holt ("Holt"), a sales representative for Fluid Controls, who testified that Steel Eagle was unsatisfied with inferior swivels it had allegedly purchased from Thompson but was pleased with swivels it had received from Fluid Controls. Fluid Controls also relies on a sales memorandum written by Holt, which records Steel Eagle's concern about how many "pirated swivels" it may have received.

This is too thin a reed on which to support an award of almost two million dollars. Haynes' testimony, which is the only support for the 100 swivels per month figure adopted by the district court, appears to be sheer speculation. Fluid Controls argues that this is simply the result of Haynes' equivocal speech patterns and that the district court was in a better position to accurately understand his testimony. However, there is little room to misinterpret Haynes' testimony. By his own admission, he is unsure of the number of lost sales. The figure of 100 swivels per month is unsupported by any documentary evidence of record and is undercut both by the estimate of Steel Eagle's requirements and the record evidence of ongoing sales by Fluid Controls to Steel Eagle. The premise underlying Haynes' argument—that problems with Thompson's devices caused Steel Eagle to decide not to employ Fluid Controls swivels on its high-end machines—is also illogical. Presumably a sophisticated manufacturer such as Steel Eagle knows that parts from different sources have different properties. Because Steel Eagle bought and incorporated Fluid Controls swivels into some of its products, the decision not to use those swivels in other products was in all likelihood the result of its own assessment of the suitability of the Fluid Controls swivels, rather than a result of Thompson's actions.

**1382**

Fluid Controls is correct that the amount of damages need not be proven exactly. However, the Supreme Court and the Tenth Circuit draw a distinction between proof of the fact of damages, which must be established with at least reasonable certainty, and the amount of damages, which may be estimated, provided it is not merely speculative. *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563–64, 51 S.Ct. 248, 75 L.Ed. 544 (1931) ("[T]here is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount."); *Montreal Trading Ltd. v. Amax Inc.*, 661 F.2d 864, 868 n. 1 (10th Cir.1981) ("A party must show with some certainty that it suffered injury as a result of the defendants' actions, but once it shows injury, the amount of damages can be estimated."); *King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1157 (10th Cir.1981) ("There must be reasonable evidence from which a jury can rationally infer the amount of damages."); *Eccher v. Small Bus. Admin.*, 643 F.2d 1388, 1392 (10th Cir.1981) ("The law clearly permits approximations as to the extent of damage, providing the fact of damage or lost profits is certain."). In this case, the proof that Fluid Controls has offered as to the fact of damages as a result of Thompson's conduct amounts to no more than speculation. An award of lost profits based on such evidence cannot be affirmed.

3

Thompson also challenges the district court's award to Fluid Controls of $33,000 as actual damages for conducting a corrective advertising campaign. *Judgment* at 2. Thompson argues that there is no need for such a campaign and characterizes the testimony on which the award was based as speculation. Thompson cites *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 195 USPQ 417 (10th Cir.1977), for the proposition that damages for an advertising campaign may be awarded only where actual confusion resulting from wrongful conduct has been shown. Because the district court cited no actual confusion caused by Thompson, he argues, there was no basis for the award. Even if the award is upheld, Thompson argues, the trebling of the award must be vacated, because the court had no basis to enhance the award. Fluid Controls responds that the award was appropriate in view of Thompson's five-year advertising campaign, and that both the Lanham Act and the DTPA permit the enhancement of all damages, including damages for an advertising campaign.

We agree with Thompson and hold that the court's award of actual damages for an advertising campaign was clearly erroneous. Tenth Circuit precedent sanctions the award of damages for advertising campaigns in certain cases. *Id.* However, in those cases, the advertising of the party engaging in unfair competition is itself a source of marketplace confusion or damage. *See id.* at 1374–76, 195 USPQ at 425–26 (awarding damages for a future advertising campaign where defendant's "saturation" advertising had "deeply penetrated the public consciousness," causing public confusion); *Ira M. Petersime & Son v. Robbins*, 81 F.2d 295, 28 USPQ 148 (10th Cir.1936) (allowing recovery of costs expended on an advertising campaign where defendant's disparaging advertising at a trade show "dampened the inclination of prospective customers to make purchases"). Here, in contrast, the court expressly found that "[Thompson's] ads themselves were not a source of marketplace confusion or damage to [Fluid Controls'] reputation or goodwill." *Special Master's Report* at 10. Furthermore, the court noted that Fluid Controls had written letters to its customers in which it

dissociated itself from Thompson and differentiated its product from his. The court based the award solely on the testimony of Fluid Controls' officers as to the type of advertising campaign that they believed necessary. Tenth Circuit precedent does not contemplate the award of damages to counteract an advertising campaign that itself caused no confusion, and we see no reason to extend that precedent to embrace such a situation.

### 4

■ Thompson also challenges the district court's award of attorneys' fees to Fluid Controls. Thompson argues that the court's underlying determination of willfulness was unsupported by direct evidence, and thus cannot form the basis for an award of attorneys' fees.

The issue of attorneys' fees does not appear to be properly before us. The special master deferred making a recommendation as to attorneys' fees until Fluid Controls identified which attorneys' fees were related to the Lanham Act and DTPA claims. *Special Master's Report* at 11. The order adopting the report expressly noted that "the appropriate amount of attorney fees to be awarded is still pending before the Special Master for determination." *Adopting Order* at 2 n. 2. The Rule 54(b) judgment provided that the award of damages was "exclusive of . . . attorney fees," *Judgment* at 2, and the issue is not otherwise mentioned in that judgment. Because there has been no final determination as to attorneys' fees, we decline to consider the issue at this juncture.

### C

■ In its Rule 54(b) judgment, the district court entered an injunction

> against all continued false designations of origin, false or misleading designations or representations of fact, passing off, and other unfair competition by Plaintiff, Earl E. Thompson, Sr., his agents, servants, employees, attorneys, and those controlling, controlled by, or in active concert or participating with Thompson involving the substitution of Thompson's products for Fluid Controls' products.

*Judgment* at 3. Thompson argues that the injunction is defective because the injunction does not enjoin specific activities, and because it is based solely on the Simpson transaction, which Thompson alleges was unique.

We discern no abuse of discretion in the issuance of the injunction. The wording properly covers the conduct underlying the determination of unfair competition, such as the use of "misleading designations" and "passing off." We have already considered and rejected Thompson's factual arguments related to the uniqueness of the Simpson transaction.

### D

The district court disposed of the parties' respective claims for correction of inventorship by finding the proposition that "both Mr. Thompson and Mr. Haynes contributed in a significant manner to the conception of the '298 patent" to be supported by clear and convincing evidence. *Thompson* at 10. The district court also found that neither party had presented "any evidence that supports the conclusion" that the other party should be removed as a joint inventor. *Id.*

■ As an initial matter, Thompson argues that the issue of inventorship is not properly before us, apparently because there was no mention of inventorship in the Rule 54(b) judgment. Fluid Controls responds that the district court found in that judgment that "[the court's] ruling in the partial findings and conclusions com-

prise [sic] a final and separable resolution of all claims addressed therein," *Judgment* at 1, and that among the district court's conclusions of law in its partial findings and conclusions was that the joint ownership of Thompson and Haynes was "fully supported" and that no correction of inventorship was merited. *Thompson* at 10. We agree with Fluid Controls. Because the court's conclusion on inventorship was addressed in its partial findings of fact and conclusions of law, final judgment was entered on the inventorship claims by the Rule 54(b) judgment. Accordingly, the inventorship issue is properly before us for review.

■■■ Whoever invents patentable subject matter is entitled to a patent thereon. 35 U.S.C. § 101 (2000). "Conception is the touchstone to determining inventorship." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473, 43 USPQ2d 1935, 1941 (Fed.Cir.1997). "[Conception] is 'the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1228, 32 USPQ2d 1915, 1919 (Fed.Cir.1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies Inc.*, 802 F.2d 1367, 1376, 231 USPQ 81, 87 (Fed.Cir. 1986)). "There is a presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence." *Fina Oil*, 123 F.3d at 1472, 43 USPQ2d at 1941; *see also Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980, 41 USPQ2d 1782, 1785 (Fed.Cir.1997) (stating that "[t]he burden of showing misjoinder or nonjoinder of inventors is a heavy one" (quoting *Garrett Corp. v. United States*, 190 Ct.Cl. 858, 422 F.2d 874, 880, 164 USPQ 521, 526 (1970))); *Price v. Symsek*, 988 F.2d 1187, 1191, 26 USPQ2d 1031, 1033–34 (Fed.Cir.1993). What is required is "corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs Wellcome*, 40 F.3d at 1228, 32 USPQ2d at 1919. "The determination of whether a person is a joint inventor is fact specific, and no bright-line standard will suffice in every case." *Fina Oil*, 123 F.3d at 1473, 43 USPQ2d at 1941.

■■■ In this case, the burden on each party was to show facts supported by clear and convincing evidence that the other person listed as an inventor had not in fact contributed to the conception of the invention. The parties appear to have misapprehended this burden at trial: while the district court found that "[t]he evidence ... is clear and convincing that both Mr. Thompson and Mr. Haynes contributed in a significant manner to the conception of the '298 patent," it also found that neither party had "presented any evidence that supports the conclusion that [the other] should be removed as a joint inventor of the '298 patent." *Thompson* at 10. Without the latter evidence, both claims 'for correction of inventorship must fail. On appeal, Thompson argues that Haynes' alleged contributions are not reflected in the claims of the '298 patent and suggests that Fluid Controls' attorney, who prosecuted the '298 patent, had a conflict of interest rendering suspect his judgment that Haynes was an inventor. Haynes responds that Thompson's characterization of Haynes' contributions is unduly narrow. These arguments are insufficient to establish that the district court erred in refusing to correct the inventorship of the '298 patent. Accordingly, we affirm the holding of the district court on this issue.

## CONCLUSION

We affirm the district court's conclusion that Thompson's conduct was a violation of the Lanham Act, the DTPA, and the common law of unfair competition. We affirm the award to Fluid Controls of Thompson's

profits, but vacate the trebling of those profits. We also affirm the district court's issuance of a permanent injunction, and its conclusion on the issue of inventorship. However, we vacate the district court's award of damages in the form of Fluid Controls' lost sales and for an advertising campaign. The case is remanded for further proceedings consistent with this opinion.

*AFFIRMED IN PART, VACATED-IN-PART, AND REMANDED.*

### COSTS

No costs.