Donald W. NUTTING, an individual doing business as Foothills Distributing Co., Plaintiff–Appellee,

v.

RAM SOUTHWEST, INC., doing business as Violets, and Ron Sheppeard, Defendants–Appellants.

No. 02–1361.

United States Court of Appeals, Federal Circuit.

May 1, 2003.

---

Before CLEVENGER, SCHALL and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

Appellants RAM Southwest, Inc., and Ron Sheppeard (collectively, "RAM") appeal the judgment of the United States District Court for the District of Colorado, finding them liable for willful infringement of U.S. Patent No. 5,547,381 and willful violations of section 43(a) of the Lanham Act, on account of their sale of "Professional Fangtastics" artificial vampire fangs. For these violations, appellee Donald W. Nutting ("Nutting") was awarded his lost profits, trebled, and a reasonable royalty, trebled, as damages for patent infringement; RAM's profits, trebled, plus the costs of corrective advertising, trebled, as damages for the Lanham Act violations; and attorney fees, costs and prejudgment interest. *Nutting v. RAM Southwest, Inc.*, No. 98–B–2360 (D.Colo. March 17, 2003) (Order granting final judgment). Because the district court abused its discretion in awarding RAM's entire profits, trebled, to Nutting as damages for false designations of origin, we *modify* the district court's award of Lanham Act damages. In all other respects we *affirm* the judgment of the district court.

I

The parties in this appeal began their relationship as manufacturer and distributor. Around 1994, Nutting developed an improved artificial vampire fang that he sold under the name "Custom Dracula Fangs." While prior fang designs typically relied on dental adhesives to affix the fangs to the wearer's mouth, Nutting's Custom Dracula Fangs relied on a thermoplastic material, which is malleable when hot but rigid when cool, for attachment. To attach one of Nutting's fangs, a user heats the thermoplastic material to soften it, and then packs the thermoplastic material into a hollow, rigid, "tooth cap body" which forms the outer shell of the fang. The interior of the tooth cap body has an irregular surface to ensure that the thermoplastic material firmly grips the tooth cap body upon hardening. When the user presses the tooth cap body onto his or her tooth, excess thermoplastic material is extruded from the tooth cap body and may be molded to fit the contours of adjacent teeth. After cooling, the thermoplastic material becomes rigid and the user is left with a fang custom-molded to his or her dentition.

Nutting filed a patent for his fang design in 1994, and Patent No. 5,547,381 (the '381 patent) issued in August 1996. In 1998, Nutting requested reexamination of the patent in light of several prior art references not considered in the original prosecution. The patentability of all claims was confirmed.

Defendant Ron Sheppeard is, along with his wife, the owner of RAM Southwest Corporation. Sheppeard met Nutting in 1994, at a Halloween trade show where Nutting was demonstrating his product. RAM had previously sold a fang product that used dental adhesives, called "Fangtastics." Nutting and Sheppeard agreed that RAM would distribute Nutting's Custom Dracula Fangs.

For reasons which are not relevant to this appeal, the distribution relationship deteriorated. Nutting stopped selling Custom Dracula Fangs to RAM in late 1995, and refused permission for RAM to repackage and sell Custom Dracula Fangs as "Professional Fangtastics." RAM subsequently sent a flier to some 2,000 customers implying that Nutting's Custom Dracula Fangs were being sold as Professional Fangtastics. While at first denying the allegation, RAM later admitted that it repackaged some of Nutting's fangs and sold them as Professional Fangtastics. RAM also claimed on its website that it had developed Professional Fangtastics. Moreover, RAM ordered a new mold for tooth cap bodies with internal ridges (like Nutting's Custom Dracula Fangs), and sold the resulting products as Professional Fangtastics.

Nutting sued RAM Southwest and Sheppeard for infringement of the '381 patent, alleging infringement of apparatus claims 1–3 and method claims 5–9. Nutting also sued for false designation of origin ("passing off") under section 43(a) of the Lanham Act, infringement of trade dress, and violation of the Colorado Consumer Protection Act. Although Nutting also included a count for breach of a non-competition agreement in his complaint, the district court held the noncompetition agreement invalid as a naked restraint on competition contrary to Colorado public policy. *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121 (D.Colo.2000).

Upon cross-motions for summary judgment, the district court construed disputed claim terms. The district court ruled that (i) claim language describing how the thermoplastic material extended to teeth other than the capped tooth, such as "teeth adjacent the person's real tooth," required the thermoplastic material to extend to more than one adjacent tooth, (ii) the adjacent teeth need not be the first and second premolars, and (iii) language requiring the thermoplastic material to be "formable around" or "conform to" adjacent teeth did not require that the adjacent teeth be completely surrounded by thermoplastic material, but only that the material be formed over at least one side of the adjacent teeth. Only the last ruling is disputed on appeal.

Identifying disputed issues of fact, the district court denied the cross-motions for summary judgment and instead held a seven-day jury trial. RAM moved for judgment as a matter of law ("JMOL") on the question of Sheppeard's personal liability at the close of plaintiff's case and at the close of evidence, but did not move for JMOL on any other issue. The district court denied the motions and denied RAM's request for a jury instruction on personal liability.

The jury returned verdicts that the patent was not invalid for obviousness, that defendants' fang product infringed apparatus claims 1–3, that both RAM Southwest and Sheppeard had induced infringement of method claims 5–9, and that infringement by both defendants was willful. The

jury also found both RAM Southwest and Sheppeard liable for willful false and deceptive designations of origin. The jury also found that both defendants had violated the Colorado Consumer Protection Act, although the jury did not find for Nutting on his trade dress infringement claim. As damages for patent infringement, the jury awarded lost profits ($236,736) and a reasonable royalty ($21,216). The jury also awarded a sum for corrective advertising ($11,329) to remedy the false designations of origin.[1]

Following the jury's verdict, RAM renewed its motion for JMOL on Sheppeard's personal liability. RAM did not move for JMOL or a new trial on any other issue. The district court denied RAM's motion. The district court granted, however, Nutting's post-verdict motion for enhanced damages, trebling all of the jury's awards. In addition, the court awarded to Nutting RAM's profits as damages for the Lanham Act violations pursuant to 15 U.S.C. § 1117(a).[2] Accepting Nutting's expert declaration that fixed RAM's profits at $382,644, the court awarded that entire sum and trebled it to over $1.1 million. The court further awarded Nutting his attorney fees, costs, and prejudgment interest on the damage awards.

RAM appeals the district court's claim construction, the sufficiency of the evidence underlying the jury's verdicts holding RAM liable for direct and induced infringement of the '381 patent, the sufficiency of the evidence underlying the jury's verdict against RAM on its obvious-

ness challenge, the district court's refusal to give RAM's proposed jury instruction on Sheppeard's personal liability, the district court's denial of JMOL on Sheppeard's personal liability, the sufficiency of the evidence underlying the jury's willfulness findings for patent infringement and the Lanham Act violations, the district court's award of enhanced damages for patent infringement, the district court's award of RAM's profits, trebled, as damages for the Lanham Act violations, the district court's award of attorney fees, and the district court's decision to award prejudgment interest at 2.25 percent over the prime rate.

We find RAM's various allegations of error to be without merit, except for RAM's challenge to the district court's post-verdict award of RAM's profits, trebled, as Lanham Act damages. We therefore confine our discussion to that aspect of RAM's appeal.

## II

█ We exercise jurisdiction over RAM's appeal pursuant to 28 U.S.C. § 1295(a)(1). We review an award of damages for violations of section 43(a) of the Lanham Act according to regional circuit law, as we do for other questions that do not implicate this court's specialized patent jurisdiction. *Thompson v. Haynes*, 305 F.3d 1369, 1374–75, 64 USPQ2d 1650, 1653 (Fed.Cir.2002). Because an award of a defendant's profits under 15 U.S.C. § 1117(a) is "subject to the principles of equity," the Tenth Circuit reviews for abuse of discretion a district court's award

---

1. The jury awarded damages on all three causes of action–patent infringement, section 43(a) passing off, and the Colorado Consumer Protection Act–as well as corrective advertising for the Colorado Consumer Protection Act violations. By pretrial stipulation, Nutting was limited to the highest single damage award in each category–as it turned out, the patent infringement damages, and corrective advertising for the Lanham Act violations.

2. The pre-trial stipulation reserved for the court the question of Nutting's entitlement to RAM's profits as damages.

of defendant's profits, *see Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1222, 47 USPQ2d 1949, 1951 (10th Cir.1998), as well as the court's award of enhanced damages under that statute, *see United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236, 53 USPQ2d 1929, 1940 (10th Cir.2000). The Tenth Circuit has instructed district courts to "fashion equitable remedies to meet the individual needs of each case, carefully weighing the equities on *both* sides of the scale to determine whether, in that district court's judgment and within its wide discretion, the plaintiff may receive a *portion* of the infringing defendant's profits." *Estate of Bishop v. Equinox Int'l Corp.*, 256 F.3d 1050, 1055, 59 USPQ2d 1481, 1484 (10th Cir.2001) (emphases added).

We consider first the district court's decision to treble its award of RAM's profits to Nutting. Section 35(a) of the Lanham Act does not explicitly provide for trebling an award of defendant's profits. The statute permits a court to award up to three times the plaintiff's "actual damages" only; this language does not apply to an award of defendant's profits. 15 U.S.C. § 1117(a) (2000); *Thompson*, 305 F.3d at 1380, 64 USPQ2d at 1657–58.

To the extent the statute permits the district court to award "such sum as the court shall find to be just," if "the amount of the recovery based on profits is either inadequate or excessive," 15 U.S.C. § 1117(a), the district court did not here find that recovery based on RAM's profits would be inadequate to compensate Nutting. The court merely cited the acts that might have given rise to the jury's finding of a section 43(a) violation, and the jury's finding that such violations were willful. However, in the Tenth Circuit, a showing of willfulness is a prerequisite to awarding any of the defendant's profits at all. *Bishop*, 154 F.3d at 1223, 47 USPQ2d at 1951–

52. Accordingly, the fact that RAM's violations were found to be willful, standing alone, is insufficient to invoke the court's power under section 35(a) to correct for inadequate recovery. The district court therefore abused its discretion in trebling the amount of RAM's profits that it awarded to Nutting.

■ We next consider whether the district court properly awarded Nutting the entire amount of RAM's profits on Professional Fangtastics. The Tenth Circuit, like other courts, has articulated three equitable rationales for the award of defendant's profits under section 35(a) as damages for trademark infringement: to repair the actual damages suffered by the plaintiff, to deter willful infringement, and to prevent the defendant from being unjustly enriched. *Bishop*, 154 F.3d at 1222–23, 47 USPQ2d at 1951. The district court here based its award on all three rationales. Taking into account the actual damages suffered by Nutting, RAM's purposeful copying of Nutting's design, and RAM's enrichment by sales of Nutting's "repackaged and copied" fangs, the district court concluded that "it would be inequitable to allow Defendants to reap the benefits of their illegal acts," and awarded Nutting all of RAM's fang sale profits as calculated by Nutting's damages expert.

The magnitude of the district court's award cannot be justified under any of the Tenth Circuit's equitable rationales. While the Tenth Circuit has emphasized that actual damage to the plaintiff is an "important factor in determining whether an award of profits is appropriate," *Id.* at 1223, 47 USPQ2d at 1951, Nutting has already been made whole by the district court's award of trebled lost profits damages. There is significant authority for the proposition that the plaintiff's lost profits and the defendant's profits are mu-

tually exclusive categories of recovery for trademark infringement, and that a plaintiff must choose between one or the other. *United Phosphorus,* 205 F.3d at 1228, 53 USPQ2d at 1934; *Nintendo of Am., Inc. v. Dragon Pac. Int'l,* 40 F.3d 1007, 1010, 32 USPQ2d 1827, 1828–29 (9th Cir.1994). Arguably, Nutting has no entitlement to any of RAM's profits at all.[3] *But see Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916) ("In this country, it is generally held that in a proper case both damages and profits may be awarded."). In any event, while Nutting elected under the pre-trial stipulation to receive patent infringement lost profits rather than false designation of origin lost profits, Nutting's receipt of treble lost profits damages, plus a treble sum for corrective advertising, means that he has been adequately compensated for actual harm arising from RAM's sale of Professional Fangtastics.

Nor can the district court's award be justified as a deterrent to willful infringement. Deterrence, while long acknowledged by courts as a rationale for the award of profits, rests on questionable foundations. By the terms of the statute an award of either plaintiff's damages or defendant's profits "constitute[s] compensation and not a penalty." 15 U.S.C. § 1117(a). The Tenth Circuit, as have other courts, has recognized that " 'deterrence is too weak and too easily invoked a justification for the severe and often cumbersome remedy of a profits award.... ' " *Bishop,* 154 F.3d at 1223, 47 USPQ2d at 1952 (quoting *ALPO Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958, 969, 16

USPQ2d 1081, 1089 (D.C.Cir.1990)). Here, the district court's stated rationale for deterrence invokes nothing more than the willfulness of RAM's violations, which, as we state above, is a prerequisite to the award of any profits at all under Tenth Circuit law. Undoubtedly the larger the award the greater its deterrent effect, but it is not apparent that deterrence requires or justifies the maximum possible sanction in every case of willful infringement. For essentially the same act, the sale of Professional Fangtastics, RAM is already liable to Nutting for well over a million dollars in treble damages and attorney fees. This sanction suffices to deter future willful infringement. *See Estate of Bishop,* 256 F.3d at 1056, 59 USPQ2d at 1485 (holding that award of $100,000 in attorney fees sufficed to deter willful infringement).

There remains the rationale of unjust enrichment. Undeniably, some of RAM's sales arose from its misleading representations associating Professional Fangtastics with Nutting's Custom Dracula Fangs, or its repackaging of Custom Dracula Fangs as Professional Fangtastics, and it would not be just for RAM to retain its profits on those sales. But it does not follow from this evidence alone that all of RAM's enrichment by Professional Fangtastics sales was unjust. In this respect, a claim for "passing off" or "palming off" under section 43(a) of the Lanham Act differs from ordinary trademark infringement. In a case of trademark infringement, or counterfeiting, each sale offends. Every article is branded with the plaintiff's mark, and for that reason each sale is presumed to have traded on the plain-

---

**3.** The district court discounted the possibility of double recovery, because Nutting's damage expert subtracted the jury's award of lost profits from his calculation of RAM's profits. While this subtraction means that none of RAM's sales were counted twice, it does not eliminate the problem of double recovery.

Double recovery in this context refers to the plaintiff's entitlement to both lost profits and defendant's profits, not whether the same sale has been counted in both categories. *See United Phosphorus,* 205 F.3d at 1228, 53 USPQ2d at 1934.

tiff's goodwill. *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–08, 62 S.Ct. 1022, 86 L.Ed. 1381 (1942). Such is not necessarily the case for a false designation of origin action under section 43(a). If, for example, Sheppeard had told but one customer that RAM was selling Custom Dracula Fangs as Professional Fangtastics, it could hardly be argued that every succeeding sale of Professional Fangtastics was tainted by that claim. Under such circumstances, a court that required RAM to forfeit all its profits to Nutting would not be fashioning an equitable remedy to meet the individual needs of the case. Likewise, in the present case, the award of profits on all of RAM's Professional Fangtastics sales cannot be sustained under an unjust enrichment theory absent evidence that all or most of those sales were in fact palmed or passed off.

Having concluded that the district court's award of defendants' profits cannot be sustained in its entirety, we consider whether the award may be sustained in part. The jury here awarded Nutting, as false designation damages, one-sixth the amount he claimed as lost profits over a six-year period. We take the jury's verdict to suggest that approximately one-sixth of RAM's Professional Fangtastics sales traded on Nutting's goodwill. Accordingly, we conclude that the record supports an award to Nutting of one-sixth of RAM's profits as calculated by Mr. Pedigo, or $63,774. This figure shall not be subject to further adjustment, save the addition of prejudgment interest at 2.25 percent over prime running from November 20, 1995, as previously determined by the district court.

We have considered each of the remaining arguments made by RAM on appeal, but we identify no other error on the part of the district court.

## CONCLUSION

The judgment of the district court is affirmed, except with respect to its award of treble defendants' profits as damages for RAM's Lanham Act violations. We modify the district court's award of profits from $1,146,932 to $63,774, plus interest as determined by the district court.

## COSTS

No costs.